# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

ALLEGHENY _____ County

For Prothonotary Use Only:

Docket No:

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name:
CNX Gas Company LLC

Lead Defendant's Name:
LLOYD'S OF LONDON

**Are money damages requested?** [x] Yes   [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes  [x] No

**Is this an *MDJ Appeal*?** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: Rodger L. Puz, Dickie McCamey

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:
_____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:
_____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:
_____

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
_____
_____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
_____
_____
- [x] Other:
Breach of Insurance Contrac
_____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:
_____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
_____
_____
- [ ] Zoning Board
- [ ] Other:
_____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:
_____

**EXHIBIT**
tabbies
1

*Updated 1/1/2011*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **CNX GAS COMPANY LLC** | CIVIL DIVISION |
| Plaintiff, | Docket No.: GD-19-7029 |
| v. | **COMPLAINT** |
| **Lloyds of London, China Reinsurance Group, The Hanover Insurance Group, Inc., Namcco (No. 808) Limited, HCC Intermediate Holdings, Inc., Hiscox Dedicated Corporate Member Ltd.,** | Filed on behalf of Plaintiff |
| | Counsel of record for this party: |
| Defendants. | Rodger L. Puz, Esquire<br>PA ID 67216 |
| | J.R. Hall, Esquire<br>PA ID 88296 |
| | Dickie, McCamey & Chilcote, P.C.<br>Firm #067<br>Two PPG Place, Suite 400<br>Pittsburgh, PA 15222-5402 |
| | (412) 281-7272 |
| | Jury Trial Demanded |

DPS$ASHLEY01
15 May 2019
10:43:43
GD-19-007029

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**CNX GAS COMPANY LLC**                    CIVIL DIVISION

                    Plaintiff,             Docket No.:

            v.

**Lloyds of London, China Reinsurance
Group, The Hanover Insurance Group,
Inc., Nameco (No. 808) Limited, HCC
Intermediate Holdings, Inc., Hiscox
Dedicated Corporate Member Ltd.,**

                    Defendants.

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED BY ENTERING A WRITTEN APPERANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF.  YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.


YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

            Allegheny County Lawyer Referral Service
            436 Seventh Ave # 3, Pittsburgh, PA 15219
                    (412) 261-0518

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

**CNX GAS COMPANY LLC**                    CIVIL DIVISION

                            Plaintiff,          Docket No.:

          v.

**Lloyds of London, China Reinsurance**
**Group, The Hanover Insurance Group,**
**Inc., Nameco (No. 808) Limited, HCC**
**Intermediate Holdings, Inc., Hiscox**
**Dedicated Corporate Member Ltd.,**

                            Defendants.

## COMPLAINT

AND NOW comes Plaintiff, CNX Gas Company LLC, by and through its undersigned

counsel, which files this Complaint against Defendants, Certain Underwriters at Lloyd's London

Subscribing to Certificate of Insurance No. USOEE1510523 and, in support thereof, states as

follows:

### THE PARTIES

1.      Plaintiff is CNX Gas Company LLC ("CNX"). CNX's sole member is CNX Gas

LLC. CNX Gas LLC's sole member is CNX Resources Corporation, which is organized under the

laws of Delaware and which has its principal place of business located at 1000 Consol Energy

Drive, Canonsburg, Pennsylvania. Accordingly, CNX is a citizen of Delaware and Pennsylvania.

2.      Made Defendants herein are all of the underwriters of a Certificate of Insurance

effected with Underwriters at Lloyds, London, issued to CNX and numbered USOEE1510523 (the

"Policy"). The underwriters of the Policy are referred to herein as "Defendants." On information

and belief, the Defendants are the "names" and members of the following Lloyd's Syndicates:

1084, 4141, 33, and 9223. They are believed to include, but are not limited to:

-3-

a.   China Reinsurance Group, a joint stock limited company incorporated in the People's Republic of China with its principal place of business in Beijing, China and, which, on information and belief, is a "name" and member of Lloyd's Syndicate 1084;

b.   The Hanover Insurance Group, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Worcester, Massachusetts and, which, on information and belief, is a "name" and member of Lloyd's Syndicate 1084;

c.   Nameco (No. 808) Limited, which, on information and belief, is a corporate entity formed under the laws of and having its principal place of business in the United Kingdom and, on information and belief, is a "name" and member of Lloyd's Syndicate 4141;

d.   HCC Intermediate Holdings, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas; and

e.   Hiscox Dedicated Corporate Member Ltd., which, on information and belief, is a corporation formed under the laws of and having its principal place of business in the United Kingdom and, on information and belief, is a "name" and member of Lloyd's Syndicate 33.

## JURISDICTION AND VENUE

3.   The Allegheny County Court of Common Pleas has jurisdiction over the Defendants because they are authorized to, and in fact do, underwrite insurance policies in the Commonwealth of Pennsylvania, including, without limitation, in Allegheny County.

4.   Venue is proper in Allegheny County as the Defendants regularly conduct business in this county.

## STATEMENT OF CLAIM

5.   CNX is a company engaged in the exploration and production of hydrocarbons.

6.   CNX was the sole owner and operator of a gas well in Monroe County, Ohio known as the Switz 28F (the "Switz 28F" or the "Well"). The Switz 28F was "spudded in" (*i.e.*, drilling of the well was begun) on November 12, 2016.

-3-

7.    The Defendants issued the Policy to CNX in the regular course of their business. A true and correct copy of the Policy is attached hereto as Exhibit "A" and incorporated herein.

8.    The Policy covers CNX for liabilities, losses, costs, expenses, and/or damages arising out of and/or resulting from the loss of control of the Well.

9.    Section A of the Policy, "Control of Well Insurance," covers costs associated with bringing the Switz 28F under control and removing any wreckage from the Well site. It provides, in part:

> Underwriters agree subject to the terms and conditions of this Certificate, to reimburse the Assured for actual costs and/or expenses incurred by the Assured: (a) in regaining control of all well(s) insured hereunder which get out of control, including any other well or hole which gets out of control as a direct result of a well insured hereunder getting out of control; (b) in extinguishing fire in or from such well(s) or which may endanger the well(s) insured hereunder; and (c) for removal of wreckage and/or debris of property of the Assured, owned or leased in whole or in part, resulting from a loss insured in (a) or (b) above provided removal and/or destruction is required by a legal or contractual obligation of the Assured, provided, however, that from any such claim for costs and/or expenses shall be deducted the value of any property salvaged or recovered inuring finally and irrevocably to the benefit of the Assured.

10.   Section B of the Policy, "Expense of Redrilling/Recompletion" covers the cost of redrilling or recompleting the Switz 28F, along with any washover, fishing and/or other salvage operations necessary to recover or restore the Well:

> Underwriters agree, subject to the terms and conditions of this Certificate, to reimburse the Assured for actual expenses incurred by the Assured including all in-hole equipment (including casing) owned by the Assured in redrilling, recompletion, washover, fishing and/or any other salvage operations as may be necessary to recover or restore any well which may be lost or damaged as a result of:
>
> A.  an occurrence insured against in Section A of this insurance; or

-4-

    B. loss of or damage to the drilling and/or workover and/or production equipment by lightning; fire, explosion or implosion above the surface of the ground or water bottom; collision with land, sea or air conveyance or vehicle; windstorm; collapse of derrick or mast; flood; strikes; riots; civil commotions or malicious damage; and where covered under Section A, earthquake, volcanic eruption or tidal wave; and in respect of offshore wells only, collision or impact of anchors, chains, trawlboards or fishing nets

and which cannot be recovered or restored by means other than redrilling and/or recompletion. Actual expenses for redrilling or recompletion shall be limited to the depth of the well and comparable condition that existed prior to the loss.

11.    Section C of the Policy, "Clean-Up Expenses and Seepage, Pollution and Contamination Insurance" covers (1) damages caused by seepage, pollution or contamination from the Well, (2) the cost of removing, nullifying, or cleaning up pollution from the Well, and (3) costs or expenses incurred in the defense of any claim resulting from such pollution.

12.    The Policy also contains a "Boots & Coots Services Endorsement" in which Underwriters agreed, in consideration of the premium charged, that CNX would not have to actually incur covered costs before Underwriters paid them (with the exception of Control of Well expenses not performed or contracted by Boots & Coots Services):

In consideration of the premium charged, it is hereby understood and agreed that the words "reimburse," "indemnify" and "cover reimbursement to the Assured" are deleted and replaced with "pay on behalf of." However, in respect of Control of Well expenses this clause will only apply in respect of services performed or contracted by Boots & Coots Services.

13.    The Policy incepted (came into effect) on July 1, 2016 at 12:01 a.m. Coverage "attached" to the Well because it was "spudded in" on November 12, 2016, after the Policy's inception date.

14.     The Policy expired on July 1, 2017 at 12:01 a.m. The Policy provides that coverage can continue after its expiration, with respect to a well that is "in the course of being drilled, deepened, serviced, worked over, completed, and/or reconditioned" when the Policy expires. In that case, the Policy provides, "coverage shall terminate upon final termination of said drilling, deepening, servicing, working over, completing and/or reconditioning, notwithstanding the fact that said final termination may occur later than" the expiration of the Policy.

15.     The Switz 28F was in the course of being drilled, deepened, serviced, worked over, completed, and/or reconditioned on July 1, 2017 at 12:01 a.m., and had been for some time before that. Coverage thus remained in full force and effect with respect to the Well and continued to insure CNX against, among other things, a loss of control of the Well.

16.     On August 12, 2017, the Well was still in the course of being drilled, deepened, serviced, worked over, completed, and/or reconditioned. On that date, the Well experienced a loss of control and became a "well out of control," as that term is defined in the Policy.

17.     The loss of control caused a high-pressure flow of drilling fluid, water, sand, and other fracking materials to escape from the wellbore, above the surface of the earth. The flow could not be stopped or controlled within a reasonable period of time by applying the Well's pressure-control equipment in accordance with all regulations, requirements and normal and customary practices in the industry.

18.     The Well was damaged or lost as a result of the loss of well control.

19.     CNX used due care and diligence in conducting operations on the Switz 28F and in attempting to control the flow once the Well became out of control. CNX used all reasonable efforts to prevent a loss under the Policy.

20.     As a result and/or arising out of the Switz 28F becoming out of control, CNX has incurred or will incur covered liabilities, losses, costs, expenses and/or damages in regaining control of the Well (covered in Section A of the Policy), in redrilling, recompleting, washover, fishing, and other salvage operations to recover or restore the well, which was damaged or lost as a result of the loss of well control (covered in Section B of the Policy), and in addressing seepage, pollution, and contamination resulting from the well out of control (covered in Section C of the Policy) (collectively referred to as "Covered Losses").

21.     CNX's incurred and expected Covered Losses total more than forty million dollars ($40,000,000).  A proof of loss identifying the Covered Losses resulting from the loss of control of the Well has been provided to the Defendants.

22.     CNX timely notified Defendants of the loss of control and other conditions at the Well, claiming coverage under the Policy.

23.     Under the terms of the Policy, the Defendants are required to "pay on behalf" of CNX all Covered Losses (except Control of Well expenses, which the Defendants are required to reimuburse). They have failed to do so, they have failed to attempt to do so, and they have failed to agree to do so.

24.     CNX has fully complied with all terms and conditions of the Policy.

25.     Despite coverage under the Policy and amicable demand by CNX for that coverage, Defendants have refused, and continue to refuse, without legal justification to pay for the Covered Losses resulting from the loss of control of the Well.

26.     Solely as a result of Defendants' failure and refusal to pay for Covered Losses on behalf of CNX as required under the Policy, CNX has suffered losses and damages that exceed forty million dollars ($40,000,000).

-7-

## CAUSES OF ACTION

### COUNT I
#### BREACH OF CONTRACT

27. CNX re-alleges and incorporates by reference the facts and allegations contained in Paragraphs 1 through 26 of the Complaint as if the same were set forth more fully herein at length.

28. At all relevant times, the Policy was a binding and enforceable contract under Pennsylvania law. CNX paid substantial premiums to the Defendants in consideration for their providing insurance coverage for all claims that trigger coverage under the Policy.

29. CNX is entitled to coverage under the Policy for the Covered Losses.

30. The terms of the Policy obligate Defendants to pay the Covered Losses on behalf of CNX.

31. Despite submission of reasonable proof and demand for full and complete payment of the Covered Losses, Defendants have refused to pay the Covered Losses on behalf of CNX, as the Policy requires.

32. The Defendants' refusal to pay is without a reasonable basis in fact.

33. CNX is entitled to insurance coverage for the Covered Losses and for all remedies available under applicable statutes for breach of contract and for late payment.

34. The Defendants' refusal to provide coverage or pay for the Covered Losses constitutes a breach of their contractual obligations to CNX.

35. CNX thus seeks damages from the Defendants, including its actual damages, the costs and expenses it has incurred in prosecuting this suit, interest for late payments under the Policy, and pre and post-judgment interest.

WHEREFORE, Plaintiff, CNX Gas Company LLC, respectfully requests that judgment be entered in its favor in excess of the jurisdictional arbitration limits of this Court, and that it be also awarded interest, attorneys' fees, costs and such further relief as deemed proper by the Court, with all costs to be borne by Defendants.

## COUNT II
### STATUTORY BAD FAITH – 42 PA. CONS. STAT. ANN. § 8371

36.     CNX re-alleges and incorporates by reference the facts and allegations contained in Paragraphs 1 through 35 of the Complaint as if the same were set forth more fully herein at length.

37.     The Defendants engaged in bad-faith conduct towards CNX with respect to their adjustment of the Covered Losses in violation of Section 8371 of Title 42 of the Pennsylvania Consolidated Statutes. *See* 42 Pa. Cons. Stat. Ann. § 8371.

38.     Section 8371 of Title 42 of the Pennsylvania Consolidated Statutes authorizes courts of this Commonwealth to take the following actions if an insurer acted in bad faith: (1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) award punitive damages against the insurer; and (3) assess court costs and attorneys' fees against the insurer. *See* 42 Pa. Cons. Stat. Ann. § 8371.

39.     In furtherance of their bad-faith and wrongful denial of coverage and refusal to pay for the Covered Losses, Defendants, acting by and through their duly authorized agents, servants, workmen, or employees, engaged in the following bad-faith and wrongful conduct:

    a.     sending correspondence falsely representing that CNX was not entitled to benefits due and owing under the Policy for the Covered Losses caused by the loss of control of the Well, which is covered under the Policy;

b.   failing to complete a prompt and thorough investigation of CNX's claim before representing that such claim is not covered under the Policy;

c.   failing to pay the Covered Losses in a prompt and timely manner;

d.   failing to objectively and fairly evaluate CNX's claim;

e.   conducting an unfair and unreasonable investigation of CNX's claim;

f.   asserting defenses under the Policy without a reasonable basis in fact;

g.   misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

h.   failing to keep CNX or its representatives fairly and adequately advised as to the status of CNX's claim;

i.   unreasonably valuing the Covered Losses and failing to fairly negotiate the amount of the Covered Loses with CNX or its representatives;

j.   failing to promptly provide a reasonable factual explanation of the basis for the denial of CNX's claim;

k.   unreasonably withholding policy benefits;

l.   acting unreasonably and unfairly in response to CNX's claim; and

m.   unnecessarily and unreasonably compelling CNX to institute this lawsuit to obtain coverage for and to pay of the Covered Losses on behalf of CNX, which Defendants should have paid promptly and without the necessity of litigation.

40.     As a direct and proximate result of Defendants' bad-faith conduct, as set forth above, CNX has sustained and will continue to sustain grave financial harm, despite CNX having fully complied with all terms and conditions of the Policy, including payment of substantial premiums for coverage that CNX never received and that was unjustly withheld by Defendants.

41.     For the reasons set forth above, Defendants have acted in bad faith in violation of Section 8371 of Title 42 of the Pennsylvania Consolidated Statutes, for which Defendants are liable for statutory damages, including interest from the date CNX's claim was made, in an amount

equal to the prime rate of interest plus 3%, court costs, attorneys' fees, punitive damages, and such other compensatory and/or consequential damages as are permitted by law.

WHEREFORE, Plaintiff, CNX Gas Company LLC, respectfully requests that judgment be entered in its favor in excess of the jurisdictional arbitration limits of this Court, and that it be also awarded interest, penalties, punitive damages, attorneys' fees, costs and such further relief as deemed proper by the Court, with all costs to be borne by Defendants.

Respectfully submitted,
DICKIE, McCAMEY & CHILCOTE, P.C.


Rodger L. Puz
PA ID 67216
J.R. Hall
PA ID 88298

Two PPG Place
Pittsburgh, PA 15222
412-281-7272

Counsel for Plaintiff CNX Gas Company LLC

## VERIFICATION

I, Jon Christopher Church, hereby aver and state that I am authorized to sign this Verification on behalf of Plaintiff, CNX Gas Company LLC, and that I have read the foregoing Complaint. The factual statements contained therein are correct to the best of my knowledge, information and belief although the language is that of my counsel, and, to the extent that the content of the foregoing document is that of counsel, I have relied upon counsel in making this Verification.

This statement and verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I make knowingly false statements, I may be subject to criminal penalties.

Date: 5-14-2019

Jon Christopher Church

No.  USOEE1510523

# CERTIFICATE
### OF INSURANCE EFFECTED WITH
## Underwriters at Lloyd's, London

PREVIOUS NO.  USOEE1510192

This certificate is issued in accordance with authorization granted (under agreement no. B1353DE1601641000) to Global Special Risks, LLC, by certain Underwriters at Lloyd's, London whose names and the proportions underwritten by them are on file in the office of said Global Special Risks, LLC and also on file in London, England.  The Underwriters do hereby bind themselves each for his own part, and not one for another, their heirs, executors and administrators.

#### In Consideration of the Stipulations herein named

| | |
|---|---|
| **Does Insure** | CNX Gas Company LLC<br>and others as more fully described herein |
| **Whose address is** | 1000 Consol Energy Drive<br>Canonsburg, PA 15317 |
| **From** | July 1, 2016 at 12:01 AM to July 1, 2017 at 12:01 AM<br>Local Standard Time at the Address of the Assured |

| | | | | | |
|---|---|---|---|---|---|
| **Amount** As per form | **Rate** | As per form | Minimum and Deposit **Premium** | | $107,948.45 |
| | | | Pennsylvania Stamping Fee | | $25.00 |
| | | | Pennsylvania State Tax | | $3,238.45 |

Hereon:  100.0000%  of the amount and premium stated herein.

This certificate is made and accepted subject to the foregoing stipulations and conditions, and to the conditions printed on the next page hereof, which are specially referred to and made a part of this certificate, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of the Underwriters shall have power to waive or be deemed, to have waived any provision or condition of this certificate unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this certificate exist or be claimed by the Assured unless so written or attached.

GLOBAL SPECIAL RISKS, LLC

BY _____

All inquiries should be addressed to
Global Special Risks, LLC
3200 Southwest Freeway
Suite 1130
Houston, TX 77027

ISSUE DATE:  July 29, 2016

# Exhibit A

## CERTIFICATE PROVISIONS

1. This entire certificate shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof; whether before or after a loss.

2. This certificate may be cancelled on the customary short rate basis by the Assured at any time by written notice or by the surrender of this certificate to Global Special Risks, LLC. This certificate may also be cancelled, with or without the return or tender of the unearned premium, by the Underwriters or by Global Special Risks, LLC, in their behalf, by delivering to the Assured, or by sending to the Assured by mail, registered or unregistered, at the Assured's address as shown herein, not less than thirty (30) days' written notice, stating when the cancellation shall be effective, and in such case the Underwriters shall refund the paid premium less the earned portion thereof on demand, subject always to the retention by Underwriters hereon of any minimum premium stipulated herein (or proportion thereof previously agreed upon) in the event of cancellation either by Underwriters or Assured.

3. It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

   It is further agreed that service of process in such suit may be made upon Mendes and Mount, Attorneys, 750 Seventh Avenue, New York, N.Y. 10019-6829 and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of any appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

4. It is expressly understood and agreed by the Assured by accepting this instrument that neither Global Special Risks, LLC, nor Messrs. Mendes & Mount, Attorneys, is an Assurer hereunder and that neither is or shall be in any way or to any extent liable for any loss or claim whatever, but that the Assurers hereunder are those Underwriters, whose names are on file as hereinbefore set forth.

5. The Assured shall immediately report to Global Special Risks, LLC, any occurrence likely to result in a claim under this certificate, and shall also file with Global Special Risks, LLC, or the Underwriters, a detailed sworn proof of loss within sixty days from the date such proof of loss is requested by Underwriters following their approval of the claim. Failure by the Assured either to report the said loss or damage or to file such written proofs of loss as above provided, shall invalidate any claim under this certificate.

6. All adjusted claims shall be paid or made good to the Assured within thirty days after presentation and acceptance of satisfactory proofs of interest and loss at the office of Global Special Risks, LLC.

7. Loss, if any, to be payable in U. S. Currency.

8. This insurance is made and accepted subject to all the provisions, conditions and warranties set forth herein or endorsed hereon, or appearing on the previous page hereof, all of which are to be considered as incorporated herein.

9. Any provisions or conditions appearing in any forms attached hereto and made a part hereof, which conflict with or alter the certificate provisions stated above, shall supersede the provisions appearing in this certificate, in so far as the latter are inconsistent with the provisions appearing in such attached forms.

10. This certificate shall not be assigned either in whole or in part, without the written consent of Global Special Risks, LLC, endorsed hereon.

11. This certificate shall not be valid unless signed by Global Special Risks, LLC.

**Global Special Risks, LLC – 3200 Southwest Freeway, Suite 1130, Houston, TX 77027**

# NOTICE TO INSURED

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation.  This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association.

Global Special Risks LLC, License #619325

Underwriters at Lloyd's, London are as follows:

| Syndicate Number | |
|---|---|
| 1084 | 40.0000% |
| 4141 | 25.0000% |
| 33 | 15.0000% |
| 9223 | 20.0000% |
| | 100.0000% |

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

B1353DE1601641000 (1/1/16)
Page 1 of 1

## SCHEDULE OF FORMS AND ENDORSEMENTS

The Forms and Endorsements listed below are attached to and change the policy.

Certificate
Pennsylvania Notice to Insured
Security Schedule  B1353DE1601641000 (1/1/16)
Schedule of Forms and Endorsements
Declarations  GSROEE Declarations
Operators Extra Expense - General Conditions  GSROEE (1/15/15)
Care, Custody and Control Endorsement - Amended (excluding rigs)  GSROEE (1/15/15)
Evacuation Expenses Endorsement  GSROEE (1/15/15)
Underground Control of Well Endorsement  GSROEE (1/15/15)
Casing Failure Endorsement  GSROEE (1/15/15)
Making Wells Safe Endorsement  GSROEE (1/15/15)
Contingent Joint Venturers Endorsement  GSROEE (1/15/15)
Turnkey Wells Endorsement  GSROEE (1/15/15)
Farmout Wells Endorsement  GSROEE (1/15/15)
Deliberate Well Firing Endorsement  GSROEE (1/15/15)
Developmental Drilling Wells Endorsement  GSROEE (1/15/15)
Boots & Coots Services Endorsement  GSROEE (1/15/15)
No Claims Return of Premium Endorsement  GSROEE (1/15/15)
Priority of Payments Endorsement  GSROEE (1/15/15)
Resultant Plugging & Abandonment Expenses Endorsement  GSROEE (1/15/15)
Rating Areas Amendatory Endorsement (0 - 12,500 ft)  GSROEE (1/15/15)
Institute Service of Suit Clause (U.S.A.)  CL.355 (1/11/92)
Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause  CL.370 (November 10, 2003)
U.S.A. & Canada Endorsement For The Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause  USCANB (29/01/04)
Institute Cyber Attack Exclusion Clause  CL.380 (November 10, 2003)
Oil Pollution Act Disclaimer  GSR-901 (3/95)
War and Civil War Exclusion Clause  NMA464 (Amended) (1/1/38)
Joint Rig & Associated Business Committee Electronic Date Recognition Exclusion  EDRE
Terrorism Exclusion Endorsement  NMA2920 (08/10/01)
U.S. Terrorism Risk Insurance Act of 2002 As Amended - Not Purchased Clause -  LMA5219 (12 January 2015)
Several Liability Notice  LSW 1001 (Insurance)
Choice of Law & Jurisdiction (U.S.A.)
Manuscript  Endorsement1
Manuscript  Endorsement2

## DECLARATIONS

1.  **ASSURED:**

    CNX Gas Company LLC

2.  **ADDRESS OF ASSURED:**

    1000 Consol Energy Drive
    Canonsburg, PA 15317

3.  **CERTIFICATE PERIOD:**

    From:   July 1, 2016
    To:     July 1, 2017
    Both days at 12:01 AM Local Standard Time at the address of the Assured.

4.  **LOSS PAYABLE:**

    Loss, if any, payable to Assured or order.

5.  **SITUATION:**

    United States of America (excluding U.S. Virgin Islands, KY, IL)

6.  **COVERAGE:**

    A.   Control of Well Insurance (as per Section A attached hereto);
    B.   Redrilling/Recompletion Insurance (as per Section B attached hereto); and
    C.   Cleanup Expenses and Seepage, Pollution and Contamination Insurance (as per Section C attached hereto).

7.  **COMBINED SINGLE LIMIT OF LIABILITY:**

    US$40,000,000.00 Combined Single Limit of Liability any one accident or occurrence as respects all coverages as set forth in Sections A, B and C attached hereto in respect of 100% interest.

    Equipment in the Assured's Care, Custody and Control:

    Subject to a separate limit of US$2,000,000.00 in respect of 100% interest, any one occurrence.

8.  **ASSURED'S RETENTION:**

    Producing/ Shut-In/ Temporarily Abandoned/ Plugged & Abandoned/ Salt Water Disposal wells:

    The Combined Single Limit of Liability specified in Paragraph 7 above is excess of the Assured's Combined Single Retention of US$150,000.00 in respect of 100% interest, any one accident or occurrence.

    Drilling/ Workover/ Recompletion/ Re-Entry wells:

    The Combined Single Limit of Liability specified in Paragraph 7 above is excess of the Assured's Combined Single Retention of US$200,000.00 in respect of 100% interest, any one accident or occurrence.

Equipment in the Assured's Care, Custody and Control:

Subject to a separate retention of US$100,000.00 in respect of 100% interest, any one occurrence.

9.   OPERATIONS:

Oil and/or gas and/or thermal energy and/or salt water disposal wells and/or injection wells and/or water supply wells in Area I.

10.   REPORTING CLAUSE:

This Certificate is issued in consideration of a Minimum and Deposit Premium of US$107,948.45 (US$102,094.00 Producing/ Shut-In/ Temporarily Abandoned/ Plugged & Abandoned/ Salt Water Disposal Premium plus US$5,854.45 Drilling/ Workover/ Recompletion/ Re-Entry Premium being 25% of the Assured's Estimated Annual Drilling/ Workover/ Recompletion/ Re-Entry Premium), but subject to a Minimum Earned Premium of US$100,000.00 and the Assured shall report to Marsh USA for transmittal to Global Special Risks, LLC within thirty days after the end of each semi-annual period during the term of this Certificate the status of all wells insured hereunder during the preceding reporting period and further agrees to pay premium at the rates provided hereunder, plus State Tax, if applicable. Premiums accruing from the reports as required herein are due and payable as the reports are made.

11.   AREAS INSURED AND RATES:

| Area | Well Type | Depth Band | Limit | Rate |
|------|-----------|------------|-------|------|
| I | Drilling | 0' - 2,500' | US$40,000,000.00 | 0.1836 |
| I | Drilling | 2,501' - 5,000' | US$40,000,000.00 | 0.2203 |
| I | Drilling | 5,001' - 8,000' | US$40,000,000.00 | 0.2938 |
| I | Drilling | 8,001' - 12,500' | US$40,000,000.00 | 0.3672 |
| I | Workover | 0' - 2,500' | US$40,000,000.00 | 0.1102 |
| I | Workover | 2,501' - 5,000' | US$40,000,000.00 | 0.1322 |
| I | Workover | 5,001' - 8,000' | US$40,000,000.00 | 0.1763 |
| I | Workover | 8,001' - 12,500' | US$40,000,000.00 | 0.2203 |
| I | Workover | 12,501' - 15,000' | US$40,000,000.00 | 0.3305 |
| I | Workover | 15,001' - 17,000' | US$40,000,000.00 | 0.4957 |
| I | Producing | 0' - 2,500' | US$40,000,000.00 | 0.0158 |
| I | Producing | 2,501' - 5,000' | US$40,000,000.00 | 0.0190 |
| I | Producing | 5,001' - 8,000' | US$40,000,000.00 | 0.0253 |
| I | Producing | 8,001' - 12,500' | US$40,000,000.00 | 0.0316 |
| I | Producing | 12,501' - 15,000' | US$40,000,000.00 | 0.0474 |
| I | Producing | 15,001' - 17,500' | US$40,000,000.00 | 0.0711 |

All rates inclusive of 20% No Claims Bonus allowed at inception subject to return in full unless the certificate has been in force for its full term with no claim paid or outstanding and subject to the renewal of this insurance being effected with Upstream Solutions through Global Special Risks. Workover/Recompletion/Re-entry operations at no additional premium if 100% AFE is US$250,000.00 or less in respect of all wells or if wireline operations only involved.
Workover includes Recompletion / Re-Entry wells
Horizontal Wells (Underbalanced or P.W.D.) - Applicable drilling rate multiplied by 1.25
Horizontal Wells (Balanced) - No Load
Total Vertical Depth to determine Depth Band, but Rate to be applied to Total Measured Depth
Producing includes Shut-In, Plugged & Abandoned, Temporarily Abandoned and Salt Water Disposal wells.

12.   SERVICE OF SUIT:

Service of process upon Underwriters in accordance with Clause 19 of the General Conditions herein may be made upon:

Mendes & Mount, Attorneys
750 Seventh Avenue
New York, NY 10019-6829

**Effective Date:**  July 1, 2016
**Attached to and forming part of Certificate No. USOEE1510523**
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE DECLARATIONS
Page 3 of 3

**OPERATORS EXTRA EXPENSE**

**GENERAL CONDITIONS**

**(TO APPLY TO ALL SECTIONS)**

1.  **CO-VENTURERS:**

    It is understood and agreed that, subject to the provisions of Clause 8 of these General Conditions, this insurance may insure interests of co-venturers (defined as co-owners, partners and/or other party(ies) having a financial and insurable interest in the wells insured hereunder), all of whom individually and collectively are non-operators (all hereinafter referred to as "Co-Venturers"), and provided the agreement to include such Co-Venturers is executed in writing between and/or among the parties prior to any occurrence giving rise to claim for reimbursement hereunder.

    Such Co-Venturers who comply with the above paragraph shall be deemed to be named as additional Assured hereunder only in respect of wells insured hereunder and only for the period(s) of time operations in respect of said wells are insured hereunder as determined by Clause 17 of these General Conditions.

    Any cover granted hereunder to Co-Venturers shall be limited to operations in which a Co-Venturer has a common interest with the named Assured and shall be subject in all respects to the terms, conditions and rates and Combined Single Limit of Liability specified herein.

    If the named Assured is not the operator of a well, then this insurance shall not cover the operator without Underwriters' prior approval.

2.  **RATING PROVISIONS:**

    a.   Rates - per Declarations:

        (1)   Drilling Rates, if any, apply for the period (a) during which any well is being drilled and/or deepened and/or completed, and (b) during any remaining period of this Certificate, if any, during which (i) such well, if any, is in its subsequent Producing and/or Shut-In and/or Plugged and Abandoned condition and (ii) the Assured is purchasing coverage hereunder for its other Producing and/or Shut-In and/or Plugged and Abandoned wells, if any;

        (2)   Workover Rates, if any, cover for the period during which any well is being serviced and/or worked over and/or reconditioned; and

        (3)   Producing and/or Shut-In and/or Plugged and Abandoned Rates, if any, are annual but shall not apply to Producing and/or Shut-In and/or Plugged and Abandoned wells, if any, for which premium at Drilling Rates under Paragraph 2a(1) of these General Conditions has been paid under this Certificate.

    b.   It is understood and agreed that the rate per foot shall be applied to the total footage drilled, measured through the hole from the surface of the ground or water bottom to the bottom of the well.

    c.   Premium applicable to deepening of wells and multiple completions shall be charged at one hundred percent (100%) of the applicable drilling rate per foot and such rate shall apply to the final completed depth of the well measured through the hole from the surface of the ground or water bottom to the bottom of the well.

3.  **RATING AREAS:**

    Area I   Land areas in the United States of America and Canada, excluding:

        (a)   Alabama, Alaska, Arizona, Colorado, Florida, Louisiana, Mississippi, Montana, New Mexico, Texas Railroad Commission Districts 1 through 4 inclusive, Utah, Wyoming;

        (b)   North of 60° North Latitude, South of 24° North Latitude, West of 140° West Longitude, and East of 52° West Longitude; and

        (c)   Texas Railroad Commission Districts 5 through 10 inclusive and Oklahoma, but only as respects those wells 10,000 feet or more in depth measured through the hole from the surface of the ground to the bottom of the well.

Area 2
(Land)   All land areas worldwide, excluding:

    (a)    Area 1 as defined above; and

    (b)    North of the Arctic Circle and South of the Antarctic Circle.

Area 2
(Wet)   Inland waters of the United States of America and Canada, Lake Maracaibo and territorial waters of the United States of America adjacent to the Continent of North America of water depths less than 10 feet at mean low tide, excluding:

    (a)    North of the Arctic Circle and South of the Antarctic Circle; and

    (b)    Alaska.

Area 3    The Gulf of Mexico, Venezuelan waters and the Gulf of Paria, excluding Area 2 (Wet) as defined above.

Area 4    Waters worldwide, excluding:

    (a)    Areas 2 (Wet) and 3 as defined above; and

    (b)    North of the Arctic Circle and South of the Antarctic Circle.

Area 5    North of the Arctic Circle and South of the Antarctic Circle.

4.    **EXCLUSIONS:**

There shall be no indemnity or liability under this Certificate for:

a.    Any fines or penalties imposed under the laws of any State or Nation or other Government entity, or any agency or subdivision thereof;

b.    Any punitive or exemplary damages including any other damages resulting from multiplication of compensatory damages;

c.    Any claims whatsoever arising directly or indirectly from any occurrence caused, in whole or in part, by any breach of any of the warranties set forth in Clause 16 of these General Conditions or by any breach of any of the conditions set forth in Clause 5 of these General Conditions;

d.    Loss, damage or expense resulting from:

    (1)    war, hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (a) by any government or sovereign power (de jure or de facto) or by any other authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by any agent of any such government, power, authority or forces;

    (2)    any weapon(s) of war employing atomic fission or radioactive force whether in time of peace or war;

    (3)    insurrection, rebellion, revolution, civil war, usurped power, or action by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of government or public authority, or risks of contraband or illegal transportation or trade;

e.    Any loss, damage or expense caused by or attributable to earthquake or volcanic eruption; or fire, explosion or tidal wave consequent upon earthquake or volcanic eruption; but

This exclusion does not apply to the following areas:

    (1)    The Gulf of Mexico not East of 82° West Longitude and not South of 24° North Latitude, (the general term Gulf of Mexico shall be deemed to include tributary waters and the Gulf Intracoastal Waterway);

(2)    The North Sea;

(3)    The United States of America East of the States of Arizona, Utah and Idaho, including the territorial waters of the Eastern Seaboard; and

(4)    Canada South of 60° North Latitude;

f.    Any claim caused by, resulting from or incurred as a consequence of:

(1)    (a)    The detonation of any explosive;

(b)    Any weapon of war;

and caused by any person acting maliciously or from a political motive; or

(2)    Any act for political or terrorist purposes of any persons, and whether or not agents of a sovereign power, and whether the loss, damage or expense resulting therefrom is accidental or intentional;

but this Exclusion f. shall not apply in respect of insured wells located in the United States of America or Canada or in the waters of the United States of America or Canada;

g.    Loss, damage or expense caused by the infidelity of the Assured or any other person or organization acting for or on behalf of the Assured;

h.    Loss, damage or expense as respects any well in the course of being drilled, deepened, serviced, worked over, completed and/or reconditioned at the inception of this insurance, until final termination of said drilling, deepening, servicing, working over, completing and/or reconditioning, unless specifically agreed to by Underwriters.

5.    <u>DUE DILIGENCE CLAUSE:</u>

Where the Assured is the Operator it is a condition of this insurance that:

a.    The Assured shall exercise due care and diligence in the conduct of all operations covered hereunder, utilizing all safety practices and equipment generally considered prudent for such operations, and in the event any hazardous condition develops with respect to an insured well, the Assured shall at their sole expense make all reasonable efforts to prevent the occurrence of a loss insured hereunder. In addition when a hazardous situation exists, the Assured shall contact Boots & Coots Services immediately.

b.    In the event of a blowout or other escape of oil or gas, from a well operated by the Assured that has the potential to become a claim recoverable under this Certificate, the Assured will endeavor in accordance with normal and customary practices in the industry to control the well or stop the escape. The Assured shall notify Boots & Coots Services immediately.

c.    Where the Assured is the operator and/or contract operator of any insured well, the Assured will comply with all regulations, requirements and normal and customary practices in the trade in respect of utilizing blowout preventers, storm chokes and other equipment to prevent the occurrence of and/or to minimize a loss insured hereunder.

d.    The Assured will maintain customary electronic data monitoring equipment. Upon any suspected crossflow, or Underground Blowout situation, the Assured will dispatch without delay a logging unit and conduct noise / temperature logging measurements as a means to confirm basis of case. It is further agreed that the Assured will protect such data and make it readily available for inspection.

Where the Assured is not the operator the Assured will endeavor to ensure that the contractors and/or operator comply with the above provisions, and all regulations, requirements and normal and customary practices in the industry in respect of utilizing blowout preventers, storm chokes and other equipment to prevent the occurrence of and/or to minimize a loss insured hereunder.

6.     <u>SUBROGATION:</u>

     a.     Underwriters shall upon reimbursement hereunder to the Assured of any loss, damage or expense be subrogated to all the Assured's rights of recovery against any other person, firm or corporation who may be legally or contractually liable for such loss, damage or expense so reimbursed by the Underwriters.

     b.     It is agreed that the Underwriters may make claim upon and institute legal proceedings against any parties believed responsible for loss, damage or expense reimbursed hereunder in the name of the Assured, and the Assured shall provide Underwriters their full cooperation in pursuing such claim or legal proceedings.

     c.     Permission is expressly granted to the Assured to waive Underwriters' rights of subrogation against any individual, firm or corporation who or which is under contract or otherwise performing work for the Assured or for whom or which the Assured is performing work or rendering services, provided always such waiver is executed in writing prior to any occurrence giving rise to claims for reimbursement hereunder.

     d.     Except as specifically provided or permitted by this Certificate, the Assured shall not waive, release or diminish rights of recovery or subrogation with respect to any claim, which, upon payment thereof by Underwriters, would otherwise belong or accrue to Underwriters, and insofar as and to the extent that any action by the Assured waives, releases or diminishes the rights of recovery or subrogation in respect of such claim, Underwriters shall have no liability under this Certificate.

7.     <u>ADDITIONAL ASSURED</u>

This insurance will include the interests of any person or organization to whom the Assured is obligated by virtue of a written contract or agreement to add as an Additional Assured to this insurance but only to the extent of such obligation of the Assured under such contract or agreement and provided such contract or agreement is executed in writing prior to any occurrence giving rise to claims for reimbursement hereunder.

8.     <u>PARTIAL INTEREST CLAUSE:</u>

The Combined Single Limit of Liability over all sections hereof, the Assured's Retention(s), any separate limit of liability set forth in any endorsement hereto, and the rates expressed herein are for a one hundred percent (100%) interest. In the event that the interest of the Assured in any one well insured hereunder does not amount to one hundred percent (100%), then said Combined Single Limit of Liability over all sections hereof, the Assured's Retention(s), any separate limit of liability set forth in any endorsement hereto, and the rate(s) applicable to that well, shall be reduced proportionately and shall apply in the same proportion as the total interest of the Assured in said well insured hereunder bears to one hundred percent (100%). In the event of an occurrence giving rise to a claim(s) recoverable hereunder, Underwriters shall in no event be liable under any section hereof or endorsement hereto for a greater percentage interest in any such claim than the Assured's percentage interest in the well with respect to which, and at the time that, such occurrence took place.

9.     <u>OTHER INSURANCE:</u>

If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this Certificate, other than insurance that is specifically stated to be excess of this Certificate, the insurance afforded by this Certificate shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this Certificate subject to the terms, conditions and limitations of other insurance.

10.     <u>COLLECTION FROM OTHERS:</u>

No loss shall be paid by Underwriters to the extent that the Assured has (have) collected the same from any other party(ies).

11.     <u>NOTICE AND PROOF OF LOSS:</u>

The Assured shall give to Underwriters, as soon as practicable, notice of any occurrence which may result in a claim hereunder, stating the time, place, cause and circumstances of each occurrence. The Assured shall also file with Underwriters, as soon as practicable, a detailed, sworn Proof of Loss and Payment Order. The Assured shall, if requested by the Underwriters, make available to the Underwriters or their representatives all records, agreements, contracts or other documents needed to determine or substantiate a claim.

12.   RESIDUAL VALUE:

In the event of an occurrence giving rise to a claim recoverable within the terms and conditions of this Certificate, the residual value of any equipment and/or materials used or purchased by the Assured in respect of such occurrence will inure to the benefit of Underwriters in the adjustment of such claim.

13.   DISCOVERY OF RECORDS:

It is understood and agreed that

a.      during the currency of this insurance, or

b.      any time thereafter within the period of time provided for bringing suit against Underwriters, or

c.      within the period of time following the bringing of suit against Underwriters until final adjudication of suit including all appeals, if any,

Underwriters shall have the right of inspecting the Assured's records pertaining to all matters of costs and expenditures of whatsoever nature relating to the wells insured hereunder, such records to be open to a representative of Underwriters at all reasonable times.

14.   CANCELLATION:

In the event of nonpayment of premium or the first installment thereof within thirty (30) days after attachment, or of any additional premium or any other installment as and when due, Underwriters may cancel this Certificate upon ten (10) days written or telegraphic notice sent to the Assured at his or its address shown herein.  Such proportion of the premium, however, as shall have been earned up to the time of cancellation for nonpayment of premium shall be payable.  In the event of an occurrence giving rise to a claim recoverable within the terms and conditions of this Certificate occurring prior to any such cancellation for nonpayment of premium, then the full minimum and deposit premium or the premium earned in accordance with the Rating Provisions in Clause 2 of the General Conditions, whichever is greater, shall be considered earned and payable.

This Certificate may be cancelled by the Assured at any time by written notice or by surrender of this Certificate to Underwriters.  This Certificate may also be cancelled by Underwriters, with or without the return or tender of the unearned premium, by delivering to the Assured, by telegraph, or by sending by mail to the Assured's address shown herein not less than thirty (30) days prior notice stating when the cancellation shall be effective.  Should this Certificate be cancelled by the Assured, the earned premium shall be either the premium earned in accordance with the rating provisions of this Certificate (with Underwriters retaining the customary short rate proportion of the premium for Producing and/or Shut-In and/or Plugged and Abandoned wells) or the minimum premium, if any, due in accordance with Certificate provisions, whichever is greater.  Should this Certificate be cancelled by Underwriters, the earned premium shall be the premium earned in accordance with the rating provisions of this Certificate (with Underwriters retaining the pro rata proportion of the premium for Producing and/or Shut-In and/or Plugged and Abandoned wells) and no minimum premium shall be applied.

Notwithstanding the foregoing, this Certificate may be cancelled by Underwriters in respect of perils of strikers, locked out workers or persons taking part in labor disturbances or riots or civil commotions upon seven (7) days written or telegraphic notice sent to the Assured at the Assured's address shown herein, without return of premium.

15.   DEFINITIONS:

a.      The term "Well(s) Insured" shall be defined as oil and/or gas and/or thermal energy wells and/or salt water disposal wells and/or injection wells and/or water supply wells that come at risk on or after the inception date of this Certificate while being drilled, deepened, serviced, worked over, completed and/or reconditioned until completion or abandonment as set forth in Clause 17 of these General Conditions for the account of the Assured and as may be included within the areas and types of wells insured as set forth in the Declarations hereto.

This definition also includes all of the Assured's scheduled producing and shut-in wells (which includes plugged, cemented and abandoned wells) provided that the schedule of these wells is on file with Global Special Risks, LLC and an appropriate premium is paid.

New and/or added and/or acquired wells not scheduled shall be covered under this Certificate from time of coming at risk to the Assured subject to advice to Underwriters as soon as practicable and additional premium to be agreed if required.

b.     The term "Occurrence" shall be defined as one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event.

     (1)     As respects windstorm, all tornadoes, cyclones, hurricanes, similar storms and systems of winds of a violent and destructive nature, arising out of the same atmospheric disturbance within any period of seventy-two (72) consecutive hours commencing during the period of this insurance, shall be considered one event.

     (2)     Each earthquake shock or volcanic eruption, unless excluded by Paragraph 4e of these General Conditions, shall constitute one event hereunder, provided that, if more than one earthquake shock or volcanic eruption shall occur within any period of seventy-two (72) consecutive hours commencing during the period of this insurance, such earthquake shocks or volcanic eruptions shall be deemed to be one event within the meaning hereof.

c.     The term "Defense Costs" shall be defined as investigation, adjustment, settlement, litigation and legal expenses, premiums on attachment of appeal bonds, and pre and post judgment interest and shall exclude all expenses for salaried employees, general retainer fees normally paid by the Assured and office expenses of the Assured.

16.     **WARRANTIES:**

Where the Assured is the Operator or Joint Operator:

a.     It is warranted that on any insured well being drilled, deepened, serviced, worked over, completed and/or reconditioned, a blowout preventer(s) of standard make will, when in accordance with all regulations, requirements and normal and customary practices in the industry, be set on surface casing or on the wellhead and installed and tested in accordance with usual practice.

b.     It is further warranted that the Assured will use every endeavor to ensure that they and/or their contractors comply with all regulations and requirements in respect of fitting storm chokes and other equipment to minimize damage or pollution, and that all equipment (including drilling and/or workover rigs) will be manned by properly certified personnel where required by regulatory authorities.

c.     It is further warranted that in the event of a well becoming out of control or other escape or flow of drilling fluid, oil, gas or water, the Assured will use every endeavor to control the well or stop the escape or flow.

d.     It is understood and agreed that all wells insured hereunder as defined in Paragraph 15a of these General Conditions for which the named Assured is the Operator, or where the named Assured has a non-operating interest but is responsible for insurance, shall be insured hereunder for not less than the named Assured's percentage interest therein.

Where the Assured is a non operator on any insured well they will endeavor to see that the Operator complies with the Warranties detailed above.

In the event there is a conflict between "normal and customary practices in the industry" and a particular "regulation, requirement" it is agreed that a failure to fully comply with the "regulation, requirement" will not be considered a breach of warranty unless the failure to comply contributed to the occurrence giving rise to the claim.

17.     **ATTACHMENT AND TERMINATION OF COVERAGE:**

a.     Attachment of Coverage:

     (1)     In respect of any well(s) insured hereunder, coverage shall attach when the Assured acquires an interest in such well(s) unless coverage attaches later by operation of any of Paragraphs 17a(2), (3) or (4) below;

     (2)     In respect of any well(s) insured hereunder spudded in during the period of this Certificate, coverage shall attach at the time of "spudding in";

     (3)     In respect of any well(s) in the course of being drilled, deepened, serviced, worked over, completed and/or reconditioned at the inception of this insurance, and which would have been insured hereunder at inception in the absence of Exclusion 4h of these General Conditions, coverage shall attach upon final termination of said drilling, deepening, servicing, working over, completing and/or reconditioning;

(4)      In respect of any other well(s) insured hereunder, coverage shall attach at inception of this Certificate.

b.     Termination of Coverage:

(1)      In respect of any well(s) insured hereunder, coverage shall terminate when the Assured ceases to have an interest in such well(s) unless coverage is terminated sooner by operation of any of Paragraphs 17b(2), (3) or (4) below;

(2)      In respect of any well(s) which are insured hereunder during drilling only, by virtue of the Assured's electing not to purchase coverage for Producing and/or Shut-in and/or Plugged and Abandoned wells, coverage shall terminate upon either total and/or complete abandonment or completion of such well(s), which shall include the setting of the "Christmas Tree," pumping equipment or well head equipment or the dismantling or removal of the drilling equipment from the drill site, or the termination of the Assured's responsibility under contract, whichever shall first occur, except that, if removal of the drilling equipment from the drill site occurs first, then the period of time between complete removal of such equipment and the commencement of completion operations shall not exceed thirty (30) days in order for said completion operations to be covered hereunder;

(3)      In respect of any well(s) insured hereunder in the course of being drilled, deepened, serviced, worked over, completed and/or reconditioned at the expiry or cancellation of this Certificate, coverage shall terminate upon final termination of said drilling, deepening, servicing, working over, completing and/or reconditioning, notwithstanding the fact that said final termination may occur later than said expiry or cancellation;

(4)      In respect of any other well(s) insured hereunder, coverage shall terminate at the expiry or cancellation of this Certificate or (if plugged and abandoned wells are not insured hereunder) upon total and/or complete abandonment of such well(s), whichever shall first occur.

18.    <u>REPORTING REQUIREMENTS:</u>

In respect of wells insured hereunder, it is understood and agreed that the Assured will exercise reasonable care in maintaining records and fulfilling reporting requirements; but, this insurance shall not be prejudiced by an unintentional error or omission in such records or reports; provided prompt notice is given to Underwriters as soon as such facts become known to the Assured and any additional premiums to be paid as required.

19.    <u>SUIT AGAINST UNDERWRITERS:</u>

It is a condition of this insurance that no suit, action or proceeding for the recovery of any claim hereunder shall be maintainable in any court of law or equity unless the same be commenced (a) within two years and one day after the time a cause of action accrues or (b) if by the laws of the state or nation of the address of the Assured shown herein such limitation is invalid, then within the shortest limit of time permitted by the laws of such state or nation.

If the Underwriters fail to pay the Assured, the named loss payee(s), if any, or their successor(s) in interest (the "claimant(s)") any amount claimed to be due under this Certificate, the Underwriters will submit their dispute with the claimant(s) to any court of competent jurisdiction within the United States (the "court"). Service of process in such suit may be made upon the person or firm named in Clause 13 of the Declarations, who are authorized and directed to accept service of process on behalf of the Underwriters. The persons named above are authorized and directed, upon the request of the claimant(s), to give a written undertaking to the claimant(s) that they will enter a general appearance upon Underwriters' behalf if the claimant(s) institute such a suit.

If any statute of any state, territory or district of the United States so provides, the Underwriters hereby designate the superintendent, commissioner or director of insurance, or other officer specified for that purpose in the statute, or his successor or successors in office (the "officer"), as their true and lawful attorney upon whom the claimant(s) may serve any lawful process in any action, suit or proceeding instituted by them or on behalf of them arising out of this Certificate and hereby designate the person(s) named above to whom the claimant(s) may serve any lawful process in any action, suit or proceeding instituted by them or on behalf of them arising out of this Certificate and hereby designate the person(s) named above to whom the officer is authorized to mail such process or a true copy thereof.

20.    <u>RECOVERY AND SALVAGE:</u>

Any salvage or other recovery including recovery through subrogation proceedings, after expenses incurred are deducted, shall accrue entirely to the benefit of the Underwriters until the sum paid by the Underwriters has been recovered.

21.   **EXTENDED EXPIRATION:**

If this Certificate should expire or be cancelled while an occurrence giving rise to a loss recoverable under this Certificate is in progress, it is understood and agreed that said loss, subject to all other terms and conditions and Combined Single Limit of Liability of this insurance, will be covered under this Certificate as if the entire loss had occurred prior to the expiration or cancellation.

22.   **DEFENSE:**

Underwriters shall not be called upon to assume the handling or control of the defense or settlement of any claim made against the Assured but Underwriters shall have the right, but not the duty, to participate with the Assured in the defense and control of any claim which may be recoverable in whole or in part under this Certificate.

Underwriters shall not be called upon to pay any Defense Costs in relation to any claim until after the final resolution of such claim.

Underwriters shall not be liable to pay any Defense Costs unless the prior consent of Underwriters was obtained before those Defense Costs were incurred.

23.   **SERVICE PROVIDER:**

Whenever there is a claim under this Certificate, Boots & Coots Services will be employed as general contractor, and will have responsibility to employ such other service providers as it deems necessary to aid in the resolution of the claim.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
Issued to:   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY  _____

## SECTION A

## CONTROL OF WELL INSURANCE

1. **COVERAGE:**

Underwriters agree subject to the terms and conditions of this Certificate, to reimburse the Assured for actual costs and/or expenses incurred by the Assured: (a) in regaining control of all well(s) insured hereunder which get out of control, including any other well or hole which gets out of control as a direct result of a well insured hereunder getting out of control; (b) in extinguishing fire in or from such well(s) or which may endanger the well(s) insured hereunder; and (c) for removal of wreckage and/or debris of property of the Assured, owned or leased in whole or in part, resulting from a loss insured in (a) or (b) above provided removal and/or destruction is required by a legal or contractual obligation of the Assured, provided, however, that from any such claim for costs and/or expenses shall be deducted the value of any property salvaged or recovered inuring finally and irrevocably to the benefit of the Assured.

Relief wells are automatically held covered hereunder subject to notice to Underwriters as soon as possible and rates to be established by Underwriters but only in respect of wells insured hereunder following an occurrence giving rise to a claim which would be recoverable under this Section A of this Policy.

2. **DEFINITIONS:**

A.   **WELL OUT OF CONTROL**

A well(s) shall be deemed to be out of control when there is an unintended flow of drilling fluid, oil, gas and/or water from the well, above the surface of the earth and/or waterbottom, which cannot be stopped or controlled within a reasonable period of time by applying the well's pressure control equipment in accordance with all regulations, requirements and normal and customary practices in the industry or when it is declared to be out of control by the appropriate regulatory authority.

B.   **EXPENSES**

Expenses recoverable hereunder shall include costs of materials and supplies required, the services of individuals or firms specializing in controlling wells and extinguishing fires, and directional drilling and similar operations necessary to bring the well(s) under control, including costs and expenses incurred at the direction of regulatory authorities to bring the well(s) under control and other expenses included within Paragraph 1 above.

C.   **COMPLETIONS**

Work done without deepening the holes to complete a well not previously completed shall be considered part of the original drilling operation and shall not be construed as workover operations within the terms of this Certificate. Wells awaiting completion shall be considered shut-in wells for the purpose of this insurance.

3. **TERMINATION OF EXPENSES:**

In any circumstances, Underwriters' liability for expenses of regaining control of well(s) shall cease when the well(s): (a) can be reentered for salvage, fishing or cleaning operations or to resume drilling, (b) is brought under control above the surface of the ground (or waterbottom in the case of a well located in water); (c) is plugged and abandoned; whichever shall first occur, or (d) upon the approval of the appropriate regulatory authority. For the purposes of this insurance, the well(s) shall be deemed to be brought under control when such authority ceases to designate the well(s) as being out of control.

4. **EXCLUSIONS:**

Notwithstanding anything to the contrary which may be contained in these clauses, Underwriters shall have no liability under this Section in respect of bodily injury, illness, disease, death, Worker's Compensation, loss of hole, loss of circulation, kick, loss of drillstem, damage to any part of contractor's drilling rig and equipment, loss or damage to property, loss of production, all fishing costs, and all expense of conditioning well(s) to resume drilling operations.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

**GLOBAL SPECIAL RISKS, LLC**

BY _____

## SECTION B

### EXPENSE OF REDRILLING/RECOMPLETION

1.   COVERAGE:

Underwriters agree, subject to the terms and conditions of this Certificate, to reimburse the Assured for actual expenses incurred by the Assured including all in-hole equipment (including casing) owned by the Assured in redrilling, recompletion, washover, fishing and/or any other salvage operations as may be necessary to recover or restore any well which may be lost or damaged as a result of:

    A.   an occurrence insured against in Section A of this insurance; or

    B.   loss of or damage to the drilling and/or workover and/or production equipment by lightning; fire, explosion or implosion above the surface of the ground or water bottom; collision with land, sea or air conveyance or vehicle; windstorm; collapse of derrick or mast; flood; strikes; riots; civil commotions or malicious damage; and where covered under Section A, earthquake, volcanic eruption or tidal wave; and in respect of offshore wells only, collision or impact of anchors, chains, trawlboards or fishing nets.

and which cannot be recovered or restored by means other than redrilling and/or recompletion. Actual expenses for redrilling or recompletion shall be limited to the depth of the well and comparable condition that existed prior to the loss.

2.   VALUATIONS:

    A.   Materials expended or destroyed shall be charged to the loss on the basis of actual cost to the Assured.

    B.   Other expenses shall be charged to the loss on the basis actually incurred.

3.   EXCLUSIONS:

Notwithstanding anything to the contrary which may be contained in these clauses, there shall be no liability under this Section in respect of:

    A.   Bodily injury, illness, disease, death, Worker's Compensation, loss of drillstem, damage to any part of contractor's drilling rig and equipment, loss or damage to property, loss of production and all fishing costs (except such fishing costs incurred in connection with redrilling/reconditioning).

    B.   Redrilling and/or recompletion or for in-hole equipment in respect of any well that was plugged and abandoned by the Assured prior to loss or damage hereunder.

4.   TERMINATION OF UNDERWRITERS' LIABILITY:

Underwriters' liability ceases when a lost or damaged well is restored to the original depth and comparable condition that existed prior to the well becoming out of control, on fire or lost or damaged as the result of a peril or perils insured in Paragraph 1.B. above, but in no event will Underwriters be required to reimburse the Assured for redrilling and recompletion expenses when a well can be completed through a relief well drilled for the purpose of controlling a well out of control.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**  CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY  _____

## SECTION C

## CLEAN-UP EXPENSES AND SEEPAGE, POLLUTION AND CONTAMINATION INSURANCE

1. **INSURING AGREEMENTS:**

Underwriters, subject to the limitations, terms and conditions of this Certificate, agree to indemnify the Assured against:

A. All sums which the Assured shall by law be liable to pay and all sums which the Assured and/or the Assured's contractors, when assumed by the Assured under contract, shall by law be liable to pay, as damages caused by or alleged to have been caused directly or indirectly by seepage, pollution or contamination arising from or caused by well(s) insured under Section A hereto which suddenly and accidentally become out of control as defined in Paragraph 2A of Section A. Contractual obligations of the Assured to others (the Assured's Indemnitees) are insured hereunder to the extent that the liability of the Assured's Indemnitees would have been covered by this Certificate had the Assured's Indemnitees been a named Assured under this Certificate;

B. the cost of removing, nullifying or cleaning up seeping, polluting or contaminating substances emanating from or caused by well(s) insured under Section A hereto which suddenly and accidentally become out of control as defined in Paragraph 2A of Section A. Contractual obligations of the Assured to others (the Assured's Indemnitees) are insured hereunder to the extent that the liability of the Assured's Indemnitees would have been covered by this Certificate had the Assured's Indemnitees been a named Assured under this Certificate;

C. costs and expenses incurred in the defense of any claim or claims, resulting from actual or alleged seepage, pollution or contamination arising from wells insured under Section A hereto which suddenly and accidentally become out of control as defined in Paragraph 2A of Section A, and also costs and expenses or litigation awarded to any claimant against the Assured, by way of interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expenses for salaried employees and all office expenses of the Assured). The Assured shall have the right to appoint counsel, which appointment, however, shall be subject to approval by Underwriters if such counsel is other than as set forth in the General Conditions;

provided always that such seepage, pollution or contamination results from an accident or occurrence taking place during the period of this insurance (including any continuation thereof provided for by Clause 17 of the General Conditions) and of which notice has been given in accordance with Clause 11 of the General Conditions hereto.

2. **ASSURED:**

As respects this Section C only, but subject always to the Combined Single Limit of Liability over all Sections of this Certificate, the unqualified word "Assured" includes the named Assured, and any principal, officer, director or stockholder or employee thereof while acting within the scope of his duties as such.

3. **APPLICATION OF SALVAGE:**

All salvages, recoveries or repayments recovered or received subsequent to a loss settlement under this Section shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the Assured and Underwriters, provided always that nothing in this clause shall be construed to mean that losses under this Section are not recoverable until the Assured's final gross claim has been ascertained.

4. **EXCLUSIONS:**

Insurance under this Section does not cover:

A. Fines or penalties, which shall be deemed to include but not restricted to punitive or exemplary damages, imposed under the laws of any state or country;

B. Loss of, damage to, loss of use or the cost of clean-up of property belonging to the Assured or in the Assured's care, custody or control but in no event shall this be deemed to exclude the cost of clean-up of land on which the Assured is operating following an accident;

C. Any of the cost of controlling a well nor the cost of drilling relief wells whether or not the relief well be successful;

    **D.**    Any claims arising directly or indirectly from seepage, pollution or contamination if such seepage, pollution or contamination:

        (1)    is intended from the standpoint of the Assured or any other person or organization acting for or on behalf of the Assured, or

        (2)    results directly from any condition in violation of or non-compliance with any rule, regulation or law applicable thereto;

    **E.**    Any claims arising directly out of the transportation of oil or other similar substances by watercraft;

    **F.**    Any claim recoverable under this Certificate solely by reason of the addition or attachment to Section A of this Certificate of the Underground Control of Well Endorsement.

**5.**    <u>COST AND APPEALS CLAUSE:</u>

In the event of any claim and/or series of claims arising out of one event where the Assured's final gross claim is likely to exceed the retention of the Assured, no costs shall be incurred on behalf of Underwriters without the consent of Underwriters, and if such consent is given, Underwriters shall consider such costs as part of the final claim hereunder. No settlement of losses by agreement shall be effected by the Assured without the consent of Underwriters where the Assured's final gross claim will exceed the retention of the Assured.

In the event that the Assured elects not to appeal against a judgment in excess of the retention of the Assured, Underwriters may elect to conduct such appeal at their own cost and expense and shall be liable for the taxable cost and interest incidental thereto and in no event shall the liability of Underwriters exceed the Combined Single Limit of Liability stated herein and in addition the cost and expense of such appeal.

**Effective Date:** July 1, 2016
**Attached to and forming part of Certificate No.** USOEE1510523
**Issued to:**  CNX Gas Company LLC

**GLOBAL SPECIAL RISKS, LLC**

BY _____

Premium: Included

## CARE, CUSTODY AND CONTROL ENDORSEMENT

1.  In consideration of payment of an additional premium of US$Included and subject to the Declarations and General Conditions, this Certificate is endorsed to cover the Assured's legal or contractual liability as oil lease operator(s) (or "Co-Venturer(s)" where applicable) for physical loss or damage to, expenses of salvage of or expense of Removal of Wreck or Debris of, oilfield plant and equipment, including but not limited to drill pipe, drill collars, subs, drill bits and core barrels, leased or rented by the Assured or in its care, custody and control at the site of any well insured under Section A of this Certificate.

2.  Underwriters' liability in respect of claims under this endorsement is limited to US$As Per Declarations in respect of 100% interest any one occurrence which shall be separate from and in addition to the Combined Single Limit of Liability set forth in the Declarations.

3.  Underwriters' limit of liability specified in Clause 2 of this endorsement shall be excess of the Assured's Retention of US$As Per Declarations in respect of 100% interest, any one occurrence, which shall be separate from and in addition to the Assured's Combined Single Retention(s) set forth in the Declarations.

4.  In the event that in-hole salvage expenses or fishing costs are incurred in respect of equipment for which the Assured has assumed responsibility and which is lost or damaged as a result of a peril insured against in this endorsement, the maximum amount recoverable for such salvage expenses or fishing costs shall be 25% of the value of the lost or damaged property in the hole at the time of loss and which is the object of salvage or fishing efforts, always subject to the overall limit of liability specified in this endorsement.

5.  Notwithstanding anything contained herein to the contrary, Underwriters shall not be liable for claims in respect of loss of or damage to:

    a.  equipment owned by the Assured or in which the Assured has a financial interest;
    b.  drilling or workover rigs or any component thereof, except in respect of an Occurrence arising out of an "unsound location" as per clause, 8, paragraph 3 of this endorsement;
    c.  diamond bits and/or diamond bit core barrels;
    d.  mud, chemicals, cement, the well or casing installed therein;
    e.  in-hole equipment whilst in the hole, unless the Assured's liability has resulted from physical loss or damage to such equipment as a result of (1) an occurrence giving rise to a claim which would be recoverable under Section A of this Certificate if the Assured's Retention applicable to Section A were nil, or (2) fire, windstorm or total loss of drilling or workover rig.

6.  This extension shall not cover or contribute to any loss, damage or expense caused by or resulting from delay; loss of use; wear; tear; gradual deterioration; mysterious disappearance; inventory shortage(s); explosion, rupture or bursting of engines, pumps, piping, tanks or any pressure container from internal pressure; electrical injury or disturbance to electrical appliances or wiring resulting from artificial or natural causes (unless fire ensues, and then from loss or damage by fire only); latent defect; faulty design; mechanical failure or breakdown of plant or equipment leased by the Assured or in the Assured's care, custody and control.

7.  Underwriters shall not be liable for loss of or damage to equipment beyond the actual sound value of such equipment at the time of loss, ascertained with proper deductions for depreciation, wear, tear and obsolescence. As respects leased or rented equipment, Underwriters shall not be liable for any sum greater than that assumed by the Assured under the terms of the rental or lease agreement less any trade or volume discount allowed by the rental company, nor shall Underwriters' liability exceed what it would cost to repair or replace any equipment involved in any loss recoverable hereunder with other equipment of like kind and quality.

8.   This endorsement shall not afford coverage with respect to any drilling operations performed for the Assured, or for the account of the Assured by another operator, upon which a written contract with the drilling contractor has not been executed in advance of commencing drilling operations, or within 48 hours thereafter, incorporating all the provisions and conditions to be effective as respects such drilling operations.  Further, this endorsement shall not extend to any oral agreements prior to subsequent to or simultaneously with the execution of the written contract on such operations, and this endorsement shall not extend to any subsequent written agreement or rider to the original contract, other than to deepen any well below the specified total depth of the original contract, affecting the assumption of liability by the well owner for contractor's plant or equipment.

Underwriters shall have no liability for loss of or damage to equipment if the drilling contract is negotiated on a turnkey or completed well basis, provided the contract is not reverted to a day work or footage contract as may be required by a mud-out or similar clause.

Notwithstanding anything contained herein to the contrary, Underwriters shall be liable for claims in respect of physical loss or physical damage to drilling or workover rigs or any component thereof, in respect of an occurrence arising out of an "unsound location" as defined under paragraph 10 "Sound Location" of the IADC Daywork Contract, or any similar sound location paragraph as may be contained within standard IADC contracts.

**Effective Date:** July 1, 2016
Attached to and forming part of Cover Note No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 2 of 2 (Amended)

Premium: Included

## EVACUATION EXPENSES ENDORSEMENT

In respect of wells insured hereunder and in consideration of payment of an additional premium of US$Included and subject to all terms and conditions and exclusions stated therein and the Combined Single Limit of Liability as stated in the Declarations applicable thereto, Section C of this Certificate is endorsed to cover reimbursement to the Assured for reasonable costs and/or expenses which the Assured incurs in the evacuation of people (other than the Assured's employees or those of contractors or subcontractors of the Assured), animals and/or property (other than the Assured's property or that of contractors or subcontractors of the Assured), but only where and to the extent that the evacuation has taken place by order of any local, state or federal governmental or regulatory authority or public emergency service, and only following a well out of control as defined in Section A of this Certificate, fire, or escape of oil and/or gas or the imminent threat thereof, which has resulted, or would result, in a claim recoverable elsewhere under this insurance if the Assured's Retention applicable thereto were nil.

Costs and expenses, if covered hereunder by the terms and conditions set forth above, shall include but not be limited to all reasonable costs of transportation, costs of storage, keeping or lodging and/or maintaining evacuated people, animals and/or property.

<u>EXCLUSION:</u>

There shall be no indemnity or liability under this endorsement for loss of use of evacuated property and loss of earnings or any other income by any evacuated persons.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## UNDERGROUND CONTROL OF WELL ENDORSEMENT

In consideration of payment of an additional premium, it is understood and agreed that the following paragraphs, contained in Section A, Control of Well Insurance hereunder, are amended to be as follows:

2.    DEFINITIONS:

A.    WELL OUT OF CONTROL

A well(s) shall be deemed to be out of control when there is an unintended flow of drilling fluid, oil, gas and/or water from the well, above or below the surface of the earth and/or waterbottom, which cannot be stopped or controlled within a reasonable period of time by applying the well's pressure control equipment in accordance with all regulations, requirements and normal and customary practices in the industry or when it is declared to be out of control by the appropriate regulatory authority.

3.    TERMINATION OF EXPENSES:

In any circumstances, Underwriters' liability for expenses of regaining control of well(s) shall cease when the well(s): (a) can be reentered for salvage, fishing or cleaning operations or to resume drilling; (b) is brought under control above or below the surface of the ground (or water bottom in the case of a well located in water); (c) is plugged and abandoned; whichever shall first occur, or (d) upon the approval of the appropriate regulatory authority. For the purposes of this insurance, the well(s) shall be deemed to be brought under control when such authority ceases to designate the well(s) as being out of control.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

Premium: Included

## CASING FAILURE ENDORSEMENT

In consideration of the premium charged and subject to the other terms, conditions, exclusions and limits of this Certificate, Section B EXPENSE OF REDRILLING/RECOMPLETION is extended to cover reimbursement to the Assured for actual costs and expenses incurred in the repair or replacement of casing damaged by the Assured's fracturing and/or completion operations but only when such damage:

1) Directly results in a Well out of Control giving rise to a claim which would be recoverable under Section A CONTROL OF WELL INSURANCE of this Certificate if the Assured's retention applicable to Section A was nil, and

2) The well can be restored without redrilling or sidetracking, however, coverage hereunder shall not be prejudiced if the Assured has made a good-faith attempt to repair or replace such damaged casing and such repair or replacement was not successful.

Coverage hereunder is subject to a sublimit of US$2,000,000.00 one hundred percent (100%) interest any one occurrence.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## MAKING WELLS SAFE ENDORSEMENT

In respect of wells insured hereunder and in consideration of payment of an additional premium of US$Included and subject to all terms and conditions and exclusions stated therein and the Combined Single Limit of Liability as stated in the declarations applicable thereto, Section A of this Certificate is endorsed to cover reimbursement to the Assured for the actual costs and expenses incurred in preventing the occurrence of a loss insured hereunder when the drilling and/or workover and/or production equipment has been directly lost or damaged by fire; lightning; explosion; implosion above the surface of the ground or water bottom; collision with land, sea or air conveyance or vehicle; windstorm, collapse of derrick or mast; collision or impact of anchors, chains, trawl boards or fishing nets; flood; strikes; riots; civil commotions or malicious damage; but only when, in accordance with all regulations, requirements and normal and customary practices in the industry, it is necessary to re-enter the original well(s) in order to continue operations or restore production from or plug and abandon such well(s).

Underwriters' liability for costs and expenses incurred by reason of this endorsement shall cease at the time that:

    (1)    operations or production can be safely resumed, or
    (2)    the well is or can be safely plugged and abandoned,

whichever shall first occur.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY    _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## CONTINGENT JOINT VENTURERS ENDORSEMENT

Notwithstanding anything contained herein to the contrary, in respect to the Assured's and Coventurer Additional Assureds' interest in each well insured hereunder, this Certificate is extended to indemnify the Assured and Coventurer Additional Assureds for their contingent legal liability to assume that part of losses as covered under this Certificate, as a result of the inability of non-operating working interests which are not insured in this Certificate to pay their share of such loss for which they are legally responsible provided the Assured reports such additional interest and pays premium thereon at the appropriate rate specified in the declarations.

This extension does not serve to increase the one hundred percent (100%) interest of liability set forth in the declarations. Upon payment of loss all of the Assured's and other Coventurer Additional Assureds' rights of subrogation are available to these Underwriters.

It is further expressly agreed that the existence of this agreement is not to be disclosed by the Assured to Coventurers not insured hereunder.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## TURNKEY WELLS ENDORSEMENT

In consideration of the additional deposit premium charged, it is hereby understood and agreed that this section is extended to insure "Turnkey Wells." For the purposes of this insurance a Turnkey Well shall be defined as a well to be drilled where the drilling contractor agrees to drill the well for the Assured to a contracted depth for a specific price and the contractor assumes all costs, responsibilities and liabilities while the well is being drilled to that depth.

The premium for a Turnkey Well shall be calculated as follows:

1.  If, under the terms of the turnkey contract, the Assured is responsible for the completion operations, the premium charged shall be calculated using fifty percent (50%) of the otherwise applicable drilling rate.

2.  If, under the terms of the turnkey contract, the Assured is not responsible for the completion operations, the premium charged shall be calculated using twenty percent (20%) of the otherwise applicable drilling rate.

3.  If it is decided that a Turnkey Well will be plugged and abandoned prior to completion, the premium charged shall be calculated using twenty percent (20%) of the otherwise applicable drilling rate.

4.  If, during the course of drilling operations, the well ceases to be under a turnkey contract and proceeds under a footage or daywork contract, the premium shall be calculated using one hundred percent (100%) of the applicable drilling rate for the entire depth of the well.

The above conditions apply only to those wells in which the Assured is the operator or has a non-operating working interest.

It is warranted that the turnkey drilling contractor shall not be named as an Assured under this certificate.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## FARMOUT WELLS ENDORSEMENT

In consideration of the premium charged and notwithstanding anything contained herein to the contrary, as respects any well(s) that the Assured has farmed out to others and for which others are contractually responsible, this Certificate is extended to cover the Assured's contingent legal liability to assume that part of losses, as covered under this Certificate, as a result of the inability of the others to pay for such loss for which they are responsible. The premium charged shall be calculated using fifteen percent (15%) of the otherwise applicable drilling rate. The above agreement is warranted that coverage details are not disclosed to parties in the farmout agreement.

Coverage hereunder shall be afforded for claims made during the period of this insurance and of which notice has been given in accordance with Paragraph 11 of the General Conditions.

This extension does not serve to increase the one hundred percent (100%) interest limits of liability of this Certificate. The limit of liability and retention stated in the Declarations shall be reduced by the proportion of such loss that the Assured is legally obligated to pay bears to the total amount of such loss.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

**GLOBAL SPECIAL RISKS, LLC**

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

### DELIBERATE WELL FIRING ENDORSEMENT

In the event that a well, which has been deemed to be out of control within the terms and conditions of this Certificate, has to be deliberately fired (A) at the Provincial, State or Federal Governments' direction or (B) by the operator due to the fact that governmental personnel are not available and provided such firing by the operator is done for safety reasons to prevent bodily injury (including bodily injury to employees) and/or property damage to third parties, coverage as afforded herein shall not be prejudiced.

The above extension of coverage is warranted that such deliberate well firing has not resulted from want of due diligence by the Assured.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium:  Included

## DEVELOPMENTAL DRILLING WELLS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that any well drilled in a proven field to complete a pattern of production shall be subject to a credit of seventeen point five percent (17.5%).

All other terms and conditions remain unchanged.

**Effective Date:**  July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## BOOTS & COOTS SERVICES ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the words "reimburse," "indemnify" and "cover reimbursement to the Assured" are deleted and replaced with "pay on behalf of." However, in respect of Control of Well expenses this clause will only apply in respect of services performed or contracted by Boots & Coots Services.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## <u>NO CLAIMS RETURN OF PREMIUM ENDORSEMENT</u>

It is agreed that in the event of this Certificate having been in force for its full term and no claims whatsoever having arisen during the currency thereof a return of premium amounting to twenty percent (20%) of the premium paid to Underwriters hereunder will be granted subject to the one hundred percent (100%) renewal of this insurance being effected with the same Underwriters through Global Special Risks, LLC.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
**Attached to and forming part of Certificate No. USOEE1510523**
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## PRIORITY OF PAYMENTS ENDORSEMENT

In consideration of the premium charged, it is hereby agreed that at the Assured's option, claims hereunder arising from one occurrence in respect of Sections A and B, may be first paid taking priority over Section C, if required.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## RESULTANT PLUGGING & ABANDONMENT EXPENSES ENDORSEMENT

In consideration of the premium charged and subject to all terms and conditions and exclusions stated herein and the Combined Single Limit of Liability applicable hereto, this Certificate is extended to cover reimbursement to the Assured for actual costs and expenses reasonably incurred in accordance with the requirements of the applicable regulatory authority to plug and abandon a Well Insured, or part thereof, which is required to be abandoned as a result of an Occurrence giving rise to a claim which is otherwise recoverable under Section A of this Certificate.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## RATING AREAS AMENDATORY ENDORSEMENT

In consideration of the premium charged and notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that land wells 0 – 12,500 feet in total vertical depth shall be rated as Area 1.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSROEE (1/15/15)
Page 1 of 1

Premium: Included

## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount (Attorneys)
750 Seventh Avenue
New York, NY 10019-6829

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)     The above named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)     The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)     Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

(1/11/92)
CL.355
Page 1 of 1

Premium: Included

### INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.        In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   1.1        ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2        the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3        any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

   1.4        the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

   1.5        any chemical, biological, bio-chemical, or electromagnetic weapon.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

**GLOBAL SPECIAL RISKS, LLC**

BY _____

CL.370
(November 10, 2003)
Page 1 of 1

Premium: Included

## U.S.A. & CANADA ENDORSEMENT FOR THE INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE 29/01/04 USCANB

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause 10/11/03 ("RACCBE"). The inclusion of RACCBE in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory. Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

USCAN B
29/01/04
Page 1 of 1

Premium: Included

## INSTITUTE CYBER ATTACK EXCLUSION CLAUSE

1.1    Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2    Where this clause is endorsed on policies covering risks of war, Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

CL.380
(November 10, 2003)
Page 1 of 1

Premium: Included

## <u>OIL POLLUTION ACT DISCLAIMER</u>

Notwithstanding any other provision of this insurance or of any underlying insurance, this insurance is not evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal or state laws. Any showing or offering of this insurance by the Assured as evidence of insurance shall not be taken as any indication that the Underwriters consent to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Underwriters do not consent to be guarantors or to be sued directly.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

GSR-901 (3/95)
Page 1 of 1

Premium:  Included

## WAR AND CIVIL WAR EXCLUSION CLAUSE
*(Approved by Lloyd's Underwriters' Non-Marine Association)*

**(To Apply In Respect Of Onshore Interests Only, Fixed Offshore Platforms And Pipelines)**

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

However, such exclusion shall not be construed to apply to loss or damage directly or indirectly occasioned by or happening through or in consequence of mines, bombs, torpedoes, missiles or other weapons of war remaining from previous hostilities or military exercises.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

1/1/38
NMA464 (Amended)
Page 1 of 1

Premium: Included

## JOINT RIG & ASSOCIATED BUSINESS COMMITTEE
## ELECTRONIC DATE RECOGNITION EXCLUSION

This policy does not cover any loss, damage, cost, claim, expense or liability, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a)   the calculation, comparison, differentiation, sequencing or processing of data involving either any date change or failure to recognise any date, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b)   any change, remediation, alteration, modification or test involving any date change, or the failure to recognise any date, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This exclusion applies irrespective of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim, expense or liability.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

EDRE
Page 1 of 1

Premium: Included

### TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEEI510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

08/10/01
NMA2920
Page 1 of 1

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED

### NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

LMA5219
12 January 2015
Page 1 of 1

Premium:  Included

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

**Effective Date:**  July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

LSW 1001 (Insurance)
Page 1 of 1

Premium: Included

## CHOICE OF LAW & JURISDICTION

A.    Choice of Law – This Certificate shall be governed by and construed in accordance with the laws of: Pennsylvania, USA and

B.    Jurisdiction – Any disputes between Assured and Insurers over the terms of this Certificate shall be subject to CL355 Institute Service of Suit Clause (USA) (1/11/92).

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

**GLOBAL SPECIAL RISKS, LLC**

BY     _____

Page 1 of 1

Premium: Included

## MARGIN CLAUSE

In the event of additions and/or deletions, throughout the Policy Period, to the Producing Well(s) scheduled herein, no additional or return premium shall be chargeable unless the total of all such additions or deletions constitute an increase or decrease in footage which exceeds Ten Percent (10%) of the scheduled net producing footage for Producing Well(s) scheduled at inception, and then the additional or return premium shall be calculated based upon 100% of the increase or decrease in footage. All such computations shall then be pro-rated to expiration.

Any premium adjustment due hereunder shall be conducted at Policy expiry.

All other terms and conditions remain unchanged.

**Effective Date:** July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:** CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

Page 1 of 1

Premium:  Included

It is hereby understood and agreed that Boots & Coots is to perform 1 rig audit on the Assured's active drilling rigs.

All other terms and conditions remain unchanged.

**Effective Date:**  July 1, 2016
Attached to and forming part of Certificate No. USOEE1510523
**Issued to:**   CNX Gas Company LLC

GLOBAL SPECIAL RISKS, LLC

BY _____

## CERTIFICATE OF COMPLIANCE

"I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents."

Submitted by: <u>Rodger L. Puz</u>

Signature: _____

Name: <u>Rodger L. Puz</u>

Attorney No. (if applicable): <u>67216</u>