IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| CNX GAS CO., L.L.C., *Plaintiff,* v. LLOYD'S OF LONDON ET AL., *Defendants.* | Civil Action No. 2:19-cv-699-WSS<br><br>Hon. William S. Stickman, IV |

## OPINION

WILLIAM S. STICKMAN IV, District Judge

Lloyds of London ("Lloyd's") opened as a coffee house. As early as 1688, it also served as a gathering place where men of enterprise shared news and discussed the latest developments in maritime commerce. Gradually it grew from a modest forum for underwriting marine insurance policies into one of the most preeminent specialist insurance marketplaces in the world. *See generally*, JULIAN BURLING, LLOYD'S: LAW AND PRACTICE 13 (2013). Coverage disagreements in the insurance context have always given rise to litigation. But federal courts throughout the United States have particularly struggled to determine whether to exercise jurisdiction in cases involving Lloyd's insurance policies. *See generally* Howard M. Tollin & Mark Deckman, *Lloyd's of London and the Problem with Federal Diversity Jurisdiction*, 9 J. TRANSNAT'L L. & POL'Y, 289, 291–99 (2000); John M. Sylvester & Roberta D. Anderson, *Is it Still Possible to Litigate Against Lloyd's in Federal Court*, 34 TORT & INS. J. 1065, 1070–71 (1999). This is because Lloyd's unique structure as merely a forum for thousands of underwriters to buy shares of risk makes it difficult to execute the citizenship analysis required to determine diversity jurisdiction. That is the difficulty at the heart of this case.

1

Plaintiff CNX Gas Co. is insured under a policy obtained through Lloyd's. It filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania for coverage after its initial claim under the policy was denied. Defendants, various entities affiliated with Lloyd's, removed to this Court. Before the Court is Plaintiff's Motion to Remand and Third-Parties' Motion to Intervene. CNX Gas Company LLC's Motion to Remand Case to State Court and Request for Oral Argument (ECF No. 17) ("Pl.'s Mot. to Remand") at p. 1; Motion to Intervene of Chaucer Corporate Capital No. 2 Ltd., Barbican Corporate member Limited and MSI Corporate Capital Limited (ECF No. 6) (Third-Parties' Mot. to Intervene") at p. 1. For the reasons set forth below, the Court will grant the Motion to Remand and deny the Motion to Intervene as moot.

## FACTUAL BACKGROUND

Plaintiff is a natural gas company in the business of exploring and producing hydrocarbons in various regions, including in western Pennsylvania. Its sole member is CNX Resources Corporation, a Delaware corporation with a principal place of business in Pennsylvania. This action stems from a coverage dispute arising out of an accident that occurred at the Switz 28F, a natural gas well operated by Plaintiff in Monroe County, Ohio. Natural gas companies customarily procure control-of-well insurance policies to protect themselves against well-related accidents. Plaintiff did so in this case through Lloyd's. Before detailing the specifics of the issues at bar, it is necessary to explain how insurance obtained through Lloyd's works.

### I. The Lloyd's Insurance Model

Lloyd's neither issues insurance policies nor subscribes to them. It merely provides a marketplace where its members can underwrite them. Lloyd's members who subscribe to shares of risk by underwriting insurance policies are referred to interchangeably as "underwriters" or "Names." The identities of Names are kept confidential. Names increase the efficiency of the

market and combine resources by forming groups called "syndicates," unincorporated groups of investors who appoint Names on their behalf. Syndicates exist for one year, dissolve, and then reconstitute. Each is identified by a number. Syndicates do not manage their own investments as a collective. Rather, the Names of each syndicate appoint one from among them to serve as the managing agent of the syndicate. The appointed Name is referred to interchangeably as "lead underwriter" or "active underwriter."[1] The lead underwriter represents the collective interest of the Names comprising that syndicate. The lead underwriter buys and sells insurance risks. If successful, it brings profit to its syndicate. Similarly, a Name profits from premiums it receives. This profit is pro-rated based on the Name's subscription to the insurance policy. BURLING, *supra*, at 1–12; COUCH ON INS. 3d §§ 39:46–39:47 (2019); Tollin & Deckman, *supra*, at 292.

To obtain an insurance policy, a prospective insured contacts an insurance broker. The broker then insures the risk through lead underwriters acting on behalf of their syndicates. Thus, the contractual relationship is formed between the insured and the individual Names comprising the syndicate, not the syndicate or Lloyd's. The Names comprising the syndicate are the insurers. Syndicates, on the other hand, are not legal entities. They do not assume liability or underwrite risk. Accordingly, only Names comprising a syndicate can be sued for breach of an insurance policy. Names have unlimited, several liability, but only for the proportion of the risk they subscribed to. Under the standard Service of Suit clause in Lloyd's policies, judgment on an insured's claim for coverage against any Name binds all other Names subscribing to that policy.

---

[1] Courts use the terms referred to throughout this Section interchangeably. *E.g.*, *NL Indus., Inc. v. Onebeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 562 & n.3 (N.D. Tex. 2006). For the sake of consistency, the Court will use the term "Name" for ordinary members of syndicates and the term "lead underwriter" for Names who are appointed to represent syndicates.

The lead underwriter has authority to bring suit on behalf of the other Names comprising the syndicate. *See* COUCH ON INS. 3d §§ 39:46–47, 229:33; Sylvester & Anderson, *supra*, at 1069.

## II. Plaintiff's Control-of-Well Policy

Plaintiff entered into a Control-of-Well Insurance Policy USOEE1510523 (the "COW Policy") for the Switz 28F. The policy was underwritten by four Lloyd's syndicates: 1) Syndicate 1084 (forty percent of the risk in aggregate), 2) Syndicate 4141 (twenty-five percent of the risk in aggregate), 3) Syndicate 33 (fifteen percent of the risk in aggregate), and 4) Syndicate 9223 (twenty percent of the risk in aggregate). Syndicate 9223 consists of two smaller syndicates: Syndicate 1955 and Syndicate 3210.

Only five entities affiliated with these syndicates are explicitly identified in Plaintiff's Complaint: 1) Defendant China Reinsurance Group ("CRG"), 2) Defendant Hanover Insurance Group ("Hanover"), 3) Defendant Nameco (No. 808) Limited ("Nameco"), 4) Defendant HCC Intermediate Holdings, Incorporated ("HCC"), and 5) Defendant Hiscox Dedicated Corporate Member Limited ("Hiscox"). The Third-Party Intervenors in this case are three other entities affiliated with the aforementioned syndicates: 1) Chaucer Corporate Capital No. 2 Limited ("Chaucer"), 2) Barbican Corporate Member Limited ("Barbican"), and 3) MSI Corporate Capital Limited ("MSI").

Chaucer is the sole Name comprising Syndicate 1084. Nameco is the sole Name comprising Syndicate 4141. Barbican is the sole Name comprising Syndicate 1955. MSI is the sole Name comprising Syndicate 3210. Barbican and MSI are thus the two Names comprising Syndicate 9223 collectively. Hiscox is a Name that comprises 72.616424% of the capital of Syndicate 33. The remaining 1,800, or so, Names that are not identified in Plaintiff's Complaint

4

comprise 27.383576% of Syndicate 33—the minority share. The composition of the Syndicates is illustrated below:

| Syndicate | Name | Risk |
|---|---|---|
| 1084 | Chaucer | 100% |
| 4141 | Nameco | 100% |
| 33 | Hiscox | 72.616424% |
| | N/A (Approx. 1,800) | 27.383576% |
| 9223 | Barbican | 100% |
| | MSI | 100% |

Though CRG, Hanover, and HCC are listed as Defendants in Plaintiff's Complaint, those three entities are not Names; therefore, they are not liable under COW Policy. Plaintiff's Complaint, ("Pl.'s Compl.") (ECF No. 1-2) at p. 3, ¶¶ 1–2; Declaration of Andrew Baker ("Decl. of Andrew Baker") (ECF No. 1-4) at p. 1, ¶¶ 3–4; Declaration of Darren Stewart (Decl. of Darren Stewart") (ECF No. 1-5) at pp.1–2, ¶¶ 3–7 ; Declaration of David Smith ("Decl. of David Smith") (ECF No. 1-6) at pp. 1–2, ¶¶ 3–5; Third-Parties' Mot. to Intervene at p. 1.

### III. Procedural History

On November 12, 2016, Plaintiff "spudded in" (*i.e.*, began drilling) the well. On August 12, 2017, the well experienced an accident. The well operators allegedly lost control. High pressure flow of fracking materials escaped from the wellbore. The well operators attempted to regain control by using two Full Opening Safety Valves ("TIW") valves—safeguards designed to shut off tubing used for well service activities—but to no avail. The well operators then activated Switz 28F's emergency shear rams. The rams cut and capped the work string, shutting down the well. The work string was lost, rendering the well useless. Despite Plaintiff's documenting its costs over the following eighteen-month period, Defendants denied coverage. Pl.'s Compl. at p. 7, ¶¶ 20–25

Plaintiff filed a two-count Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania on May 14, 2019, alleging breach of the COW contract and statutory bad faith.

Plaintiff purported to sue all of the Names who underwrote the COW Policy. *See* Pl.'s Compl. at pp. 1, 8–10, ¶¶ 27–41. Plaintiff only identified five Names as Defendants in the Complaint—CRG, Hanover, Nameco, HCC, and Hiscox. Plaintiff did not explicitly identify the remainder of the names underwriting the COW Policy because Lloyd's kept them confidential. Defendants filed their Notice of Removal to this Court on June 14, 2019, invoking diversity jurisdiction. Defendants' Notice of Removal ("Def.'s Notice of Removal") (ECF No. 1) at p. 1.

On June 19, 2019, Nameco, Hiscox, Chaucer, Barbican, and MSI filed an Answer. *See* Answer, Affirmative Defenses and Counterclaim of Defendants Nameco (No. 808) Limited, and Hiscox Dedicated Corporate Member ltd. and Intervenors Chaucer Corporate Capital No. 2 Ltd., Barbican Corporate Member Limited and MSI Corporate Capital Limited ("Def.'s and Third-Parties' Answer") (ECF No. 4) at p. 1. The first two Names characterized themselves as Defendants, while the latter three characterized themselves as Intervenors. That same day, Chaucer, Barbican, and MSI—three Names who underwrote the COW Policy but were not specifically identified in the Complaint, jointly filed a Motion to Intervene. *See* Third-Parties' Mot. to Intervene at p. 1. Oral argument was held on September 30, 2019.

## STANDARDS OF REVIEW

The determination of Plaintiff's remand motion centers on the question of the Court's jurisdiction. Defendant removed based on diversity jurisdiction. Federal district courts may exercise diversity jurisdiction over actions where 1) the amount in controversy exceeds $75,000.00, and 2) the parties to the suit are diverse. 28 U.S.C. § 1332(a). Section 1332 requires complete diversity: every defendant must have different citizenship from every plaintiff. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). Defendants in a civil case in state court may remove to a federal district court so long as

the requirements of Section 1332 are satisfied. 28 U.S.C. § 1441(a). All defendants must join or consent to the petition to remove unless one of the following exceptions applies: "(1) a non-joining defendant is an unknown or nominal party; (2) a defendant has been fraudulently joined; or (3) a non-resident defendant has not been served at the time the removing defendants filed their petition." *Michaels v. State of N.J.*, 955 F. Supp. 315, 319 (D.N.J. 1996) (citing *Balazik v. Cnty. of Daughpin*, 44 F.3d 209, 213 & n.4 (3d Cir. 1995)).

A lack of subject matter jurisdiction is a mandatory basis for remand. 28 U.S.C. § 1447(c). A removing party asserting diversity jurisdiction has the burden to demonstrate that the requirements for diversity are met. *McNutt Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). The presumption at every stage of litigation is that the court lacks federal jurisdiction unless proven otherwise. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895) (internal citation omitted). Doubts as to jurisdiction must be resolved in favor of remand. *Samuel-Bassett v. KIA Motors Am.*, Inc., 357 F.3d 392, 403 (3d Cir. 2004). Citizenship for diversity purposes must be assigned not to "artificial or 'invisible' legal creatures," but rather to "real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citing cases). Failure to object to removal cannot confer subject matter jurisdiction on a court where it otherwise would have none. *Medlin v. Boeing Vertol Col.*, 620 F.2d 957, 960 (3d Cir. 1980).

## ANALYSIS

The determination of whether the removing defendants have satisfied their burden of establishing the complete diversity required by 28 U.S.C. §1332 in this case hinges upon the identities of the defendants as pleaded in Plaintiff's Complaint. Plaintiff argues that it intended to sue all of the Names who underwrote the COW Policy. The Complaint pleads, in relevant part,

> 2. Made Defendants herein are all of the underwriters of a Certificate of Insurance effected with Underwriters at Lloyds, London, issued

> to CNX and numbered USOEE1510523 ("the Policy"). The underwriters of the Policy are referred to herein as "Defendants." On information and belief, the Defendants are the "names" and members of the following Lloyd's Syndicates: 1084, 4141, 33 and 9223.

Pl.'s Compl. at p. 1, ¶ 2. Despite clearly and unequivocally expressing the intent to sue all of the Names underwriting the COW policy, the caption does not specifically identify them or the Syndicates to which they belong. Disposition of the threshold jurisdictional question thus depends upon the resolution of two issues: 1) whether the Complaint sufficiently pleaded all the Names who underwrote the COW Policy as Defendants, or rather, whether Plaintiff's action must be construed as extending only against the specific Defendants identified in the caption; and 2) whether Defendants met their burden to establish diversity jurisdiction over all of the Names sufficiently pleaded.

I.     **The Form of the Complaint**

Whether the Court may exercise diversity jurisdiction over this action depends on the Defendants' identities. If the Complaint is construed as asserting claims against *only* the parties named in the caption, there is no dispute that complete diversity exists. Plaintiff's position, however, is that Paragraph Two of its Complaint successfully pleaded every Name that underwrote the COW Policy into the case—both those Plaintiff could identify and those it could not. Plaintiff argues that it was Defendants' burden to establish complete diversity. Because they have not done so for all of the Names on the COW Policy, Plaintiff seeks remand. Defendants object, arguing that the Complaint can only be construed as asserting claims against the specific Defendants named in the caption.

Whether the language in Paragraph 2 of the Complaint identifying "all underwriters" who are the "names and members of the following Lloyd's Syndicates" as Defendants can be construed

as, in fact, asserting a claim against all of the Names begins with an analysis of Rule 10 governing 'Form of Pleadings". According to Rule 10(a), every pleading must have a caption and a title that names all the parties. FED. R. CIV. P. 10(a). Multiple authorities have held, however, that the caption is not determinative of the identity of the parties to the action, the district court's personal jurisdiction over the defendant, or its subject matter jurisdiction over the claims asserted. WRIGHT & MILLER, 5A FED. PRAC. & PROC. CIV. § 1321 (4th ed. Aug. 2019). It is the essence of the complaint that matters, not its title or label. *See Booker v. State of Ark.*, 380 F.2d 240, 242 (8th Cir. 1967), *abrog. on other grounds by Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484 (1973). The United States Court of Appeals for the Tenth Circuit has held, for example, that defendants not named in a caption will be deemed to be in the case if they are identified in the body of the complaint. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("It has been held a party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant; merely naming a party in a brief, however, does not provide adequate notice."). The Court finds these authorities persuasive and holds that the body of the Complaint here leads to the unmistakable conclusion that Plaintiff intended to sue all of the Names who underwrote the COW Policy.[2]

This conclusion is consistent with the spirit behind the Rules Enabling Act of 1934—to simplify federal pleading and prioritize substance over form. Pub. L. 73-415, 48 Stat. 1064 (codified as amended at 28 U.S.C. § 2072). That spirit is not only a historical force, but a

---

[2] Though not binding on this Court, it is noteworthy that Pennsylvania courts, where this case originated, apply a similar rule for cases when a plaintiff manifests an intent to sue a defendant in the body of its complaint notwithstanding its failure to name the defendant in the caption: substance over form. *See Piehl v. City of Phila.*, 987 A.2d 146, 157 (Pa. 2009) (permitting a plaintiff to amend the caption of her complaint to name a defendant previously only designated in the body pursuant to the liberal policy underlying Pa. R. Civ. P. 1033).

contemporary one, one that compels federal courts to cast aside petty formalism in favor of a "forgiving spirit" towards technical lapses in complaint drafting. *See* Paul D. Carrington, *"Substance" and "Procedure" in the Rules Enabling Act*, 1989 DUKE L. J. 281, 307; *see also* WRIGHT & MILLER, 5 FED. PRAC. & PROC. CIV. § 1286 (3d ed. Aug. 2019).

With these principles in mind, the Court holds that Plaintiff's Complaint adequately asserts claims against all of the Names, not merely those specifically named in the caption. The second Paragraph of the Complaint unequivocally states that "Defendants herein are ***all of the underwriters of a Certificate of Insurance*** . . . . On information and belief, the Defendants are the 'names' and members of the following Lloyd's indicates: 1084, 4141, 33, and 9223." Pl.'s Compl. at p. 3, ¶ 2 (emphasis added). Further, to the extent that the Complaint separately identified any of the Names, it specifically does so in a representative, but not exclusive fashion: "They [the Names] are believed to include, but are not limited to: [the specifically identified Names]." *Id.* In addition to expressing the intent to assert claims against all of the underwriting Names, Paragraph 2 also identifies the four Lloyd's syndicates to which Plaintiff asserts all of the underwriting Names belong—Syndicates 1084, 4141, 33 and 9223. An examination of the Complaint—particularly Paragraph 2—leaves no doubt that Plaintiff intended to assert claims against all of the Names who underwrote the COW Policy.

Defendants argued (at oral argument) that if Plaintiff wanted to sue all the Names, it should have included all of them, or least the names of the Syndicates they comprise, in the caption. But Plaintiff cannot be blamed for failing to identify every Name before discovery. This is especially the case because identities of Lloyd's Names are usually kept confidential. *Cf. Lincoln Ben. Life Co. v. AEI Life, L.L.C.*, 800 F.3d 99, 108–09 (3d Cir. 2015) ("[A] rule requiring the citizenship of each member of each LLC to be alleged affirmatively *before* jurisdictional discovery would

effectively shield many LLCs from being sued in federal court without their consent. This is surely not what the drafters of the Federal Rules intended."). Moreover, parties in actions arising out of Lloyd's policies frequently decline to individually identify each Name in the caption, but rather, generically identify "underwriters of Lloyd's" or some permutation thereof. *See Ario v. The Underwriting Members of Syndicate 53 at Lloyd's for the 1998 Year of Account*, 618 F.3d 277 (3d. Cir. 2010); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010); *Certain Interested Underwriters v. Layne*, 26 F.3d 39 (6th Cir. 1994); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. AMT008174 v. VMA Constr. LLC*, No. 17-5626 (ES) (SCM), 2018 WL 314815, at **1, 2 (D.N.J. Jan 5. 2018).

The Court holds that Plaintiff's Complaint adequately pleaded all of the Names who underwrote the COW Policy as Defendants in this case. First, the caption purports to name "Lloyds of London" along with certain suspected underwriters that Plaintiff was able to identify. The prefatory language of the Complaint states:

> AND NOW comes Plaintiff, CNX Gas Company LLC, by and through its undersigned counsel, which files this Complaint against Defendants, **Certain Underwriters at Lloyd's London Subscribing to Certificate of Insurance No. USOEE1510523**, and in support thereof, states as follows:

Pl.'s Compl. at p. 3 (emphasis added). Paragraph Two of the Complaint unequivocally alleges, in relevant part, that "Defendants herein are ***all of the underwriters*** of a Certificate of Insurance effected with Underwriters at Lloyd's, London, issued to CNX and numbered USOEE1510523." *Id*. at p. 3, ¶ 2 (emphasis added). Whatever technical defects there may be in the caption of the

Complaint, the body nevertheless sufficiently gave notice that all the Names who underwrote the COW Policy were being sued.³

## II. Diversity Jurisdiction

Having established *who* is being sued for the purposes of diversity—all of the Names—the next question is whether Defendants satisfied their burden to justify removal. The nature of the Lloyd's business model raises questions of *whose* citizenship is relevant for diversity of citizenship analysis. A circuit split exists on this issue. COUCH ON INS. 3d §§ 229:23, 241:10.

The split ultimately comes down to whether, for diversity purposes, a Lloyd's syndicate is more like a trust or a limited partnership—in other words, whether only the representative Name's citizenship is relevant (the trust model), or whether the citizenship of all of the Names must be considered (the limited partnership model). The United States Court of Appeals for the Sixth Circuit takes the minority position that only a Name serving as lead underwriter counts for diversity purposes. *Layne*, 26 F.3d at 39. Only lead underwriters, the Sixth Circuit concluded, can qualify as "real parties in interest" for diversity purposes. In so reasoning, the Sixth Circuit principally relied on Tennessee agency law, which tracked the common law principle that only agents themselves are liable for conduct on behalf of undisclosed principals. *Id.* at 43 (citing *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn. Ct. App. 1987); and then citing RESTATEMENT

---

³ Defendants argue that under the COW Policy's Service of Suit clause, service was only properly made on the Names identified in the caption, not all the Names who underwrote the policy. *See* Underwriters Response to Motion to Remand ("Def.'s Resp.") (ECF 28) at p. 8. Within the COW Policy, Clause 3 of the Certificate of Provisions, Clause 12 of the Declarations, and Clause 19 of the General Conditions (the "Service of Suit clause") provided that service of process upon the firm of Mendes & Mount constituted effective service upon all the "Underwriters" (*i.e.*, the Names). *See* Pl.'s Compl. at p. 22, 29, ¶¶ 12, 19. The fact that the "Underwriters" were identified by Syndicate number in the COW Policy implies not that the Underwriters are the Syndicates themselves, but rather that they are the Names that comprise the Syndicates. *Compare* Def.'s Resp. at 8, *with* Pl.'s Compl. at p. 18. Service is, therefore, not an issue in this case. All Names who underwrote the COW Policy were properly served in accordance with the terms of the Policy.

(SECOND) OF AGENCY § 322 (Am. Law Inst. 1958)). The trust analogy relies heavily on *Navarro Sav. Ass'n v. Lee*, 446 U.S. at 460.

The United States Courts of Appeals for the Second, Seventh, and Eleventh Circuits, on the other hand, form the majority regime. They take the view that when a syndicate is sued, the citizenship of every Name comprising the syndicate counts, not merely that of the Name serving as lead underwriter. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 938 (2d Cir. 1998) (hereinafter "*Squibb I*"); *E. R. Squibb & Sons, Inc. v. Lloyd's & Co.'s*, 241 F.3d 154, 159 (2d Cir. 2001) (hereinafter "*Squibb II*"); *Ind. Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 319 (7th Cir. 1998); *Osting-Schwinn*, 613 F.3d at 1089.[4] In doing so, they chiefly rely on the Supreme Court's decision in *Carden v. Arkoma Assocs.* in deeming Lloyd's syndicates more akin to limited partnerships—a type of unincorporated association in which every member must be diverse from the plaintiff, not merely the representative. 494 U.S. at 187.[5] Most jurisdictions characterize Lloyd's syndicates as unincorporated associations. *E.g.*, 62 F. Supp. 2d at 1129.

---

[4] District court opinions within circuits forming the majority regime are persuasive to the Court as well. *Se. Crane Inspections, L.L.C. v. Chaucer Corp. Cap. (No. 3) Ltd.*, Civ. Action No. 16-00392-KD-B, 2016 WL 6900798, at **1, 2 (S.D. Ala. Oct. 14, 2016) (applying *Osting-Schwinn*, 613 F.3d at 1089); *Sikorsky Aircraft Corp. v. Lloyds TSB Gen. Leasing (No. 20) Ltd.*, 774 F. Supp. 2d 431, 442–43 (D. Conn. 2011) ( applying *Squibb I*); *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 62 F. Supp. 2d 1116 (S.D.N.Y. 1999) (same); *Humm v. Lombard World Trade, Inc.*, 916 F. Supp. 291, 297–98 (S.D.N.Y. 1996) (preceding *Squibb I* but applying the same rule of law); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 873 (S.D.N.Y. 1995) (same).

[5] Other unincorporated associations where every member must be diverse include limited liability companies, labor unions, joint stock companies, and joint ventures. *Lincoln Ben. Life Co. v. AEI Life, L.L.C.*, 800 F.3d 99 (3d Cir. 2015) (LLCs); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 352–53 (3d Cir. 2013) (LLCs); *Ind. Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 316 (6th Cir. 1998) ("Membership associations such as labor unions, joint stock companies, and joint ventures take the citizenship of each member." (citing *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965); and then citing *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900))); *Underwood v. Maloney*, 256 F.2d 334, 339 (3d Cir. 1958) (unions).

District courts addressing this issue in circuits without direct authority from their respective courts of appeals—including all of those that have done so in this circuit—overwhelmingly side with the majority regime. *E.g.*, *VMA Constr., LLC*, 2018 WL 314815, at *3; *Lloyd's v. Gailes*, Civ. Action No.: 4:16-cv-77-DMB-JMV, 2016 WL 3033741 at **1, 4 (N.D. Miss. May 26, 2016); *Advanced Sleep Ctr., Inc. v. Certain Underwriters at Lloyd's London*, Civ. Action No. 14-592, 2015 WL 4097069, at **1, 2 & n.17 (E.D. La. July 7, 2015); *D'Andrea Constr. Co. v. Old Rep.*, Civ. Action No. 13-997 (ES) (JAD), 2014 WL 5018885, at **1, 7 (D. N.J. Oct. 6, 2014); *Mohamed v. Certain Underwriters at Lloyd's of London*, Civ. No. 2001/0128, 2014 WL 6872893, at **1, 2 (D.V.I. Apr. 24, 2014); *Certain Underwriters at Lloyd's, London Subscribing to Policy No. GL-2918-028 v. Wenhaven, Inc.*, Civ. No. 2014-03, 2014 WL 4627978, at **1, 5 (D.V.I. Sept. 16, 2014); *Nat'l Union Fire Ins. Co. of Pittsburg, Pa v. Siemens Energy, Inc.*, No. 3:13-cv-115, 2013 WL 3323182, at **1, 1 (S.D. Tex. July 1, 2013); *Certain Underwriters at Lloyd's of London Subscribing to Policy No. FINFR 1001771 v. Com. Int'l Inc.*, No. 2:12-cv-00824-ODW (JCx), 2012 WL 2328215, at **1, 2 (C.D. Cal. June 19, 2012); *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.*, No. C02-5131 RBL, 2003 WL 27176596, at **1, 2 (W.D. Wash. Dec. 4, 2003); *Majestic Ins. Co. v. Allianz Int'l Ins. Co.*, 133 F. Supp. 2d 1218, 1223 (N.D. Cal. 2001); *Transamerica Corp. v. Reliance Ins. Co. of Ill.*, 884 F. Supp. 133, 139 (D. Del. 1995); *Lowsley-Williams v. North R. Ins. Co.*, 884 F. Supp 166, 172 (D.N.J. 1995); *Bath Iron Works Corp. v. Certain Member Co.'s of Inst. of London Underwriters*, 870 F. Supp. 3, 7 (D. Me. 1994); *Queen Victoria Corp. v. Ins. Specialists of Haw., Inc.*, 711 F. Supp. 553, 554–55 (D. Haw. 1989). The Court, therefore, adheres to the majority view and requires complete diversity to exist between Plaintiff and all of the Lloyd's Names underwriting the policy. Defendants concede that the majority regime is correct: "Caselaw is clear that when the syndicates are suing or being sued in a

representative capacity . . . each name or member of the syndicate must be diverse for diversity jurisdiction to be invoked." Def.'s Resp. at p. 9.

Defendants have failed to establish complete diversity. Only the identity of the Names comprising Syndicates 1084, 9223, 4141 and 72.6 percent of Syndicate 33 are established. The Names comprising the remaining 27.4% of Syndicate 33 remain a mystery. Importantly, the remaining 27.4% of Syndicate 33 allegedly consists of over 1,800 Names. *See* Plaintiff CNX Gas Company LLC's Reply Memorandum in Support of Motion to Remand Case to State Court ("Pl.'s Reply to Opp. to Remand") (ECF No. 30) at p. 1. Given that Plaintiff's Complaint pleaded all the Names who underwrote the COW Policy, it follows that Defendants must identify the citizenship of all the Names to permit this Court to exercise diversity jurisdiction on removal.[6] The removing Defendants' failure to identify and establish the citizenship of some 1,800 unidentified Names comprising the minority share of Syndicate 33 makes it impossible for the Court to establish complete diversity. At the very least, it creates substantial doubt as to whether such complete diversity exists. This doubt must be resolved in favor of remand. *See Samuel-Bassett*, 357 F.3d at 403. Defendants have not met their burden of establishing complete diversity. *See Osting-Schwinn*, 613 F.3d at 1092 (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)).

### III. Intervention

Third-Party Intervenors seek to come into the case under Rule 24(a)(2), and in the alternative, under Rule 24(b). *See* Third Parties' Mot. to Intervene at pp. 2–4, ¶¶ 5–12. Plaintiff is correct in asserting that the Motion to Intervene is unnecessary. *See* Plaintiff CNX Gas Company

---

[6] This case, where the removing underwriters seek to proceed in federal court is the natural corollary to the more common scenario in Lloyd's cases where it is the plaintiff who seeks diversity jurisdiction, not the defendant. In such cases, courts overwhelmingly require the plaintiff to demonstrate the diversity of every defendant-Name.

LLC's Brief in Opposition to Motion to Intervene ("Pl.'s Opp. to Mot. to Intervene") (ECF No. 19) at p.1. Paragraph Two of the Complaint rendered the all Names who underwrote the COW Policy parties to the dispute *ab initio*, including those now attempting to come into the case as "Third-Party Intervenors." The matter is moot, however, because the requirements for subject matter jurisdiction have not been satisfied.

## CONCLUSION

AND NOW, this sixteenth day of October, 2019, it is hereby **ORDERED** that Plaintiff CNX Gas Company LLC's Motion to Remand Case to State Court (ECF No. 17) is hereby **GRANTED**. It is further hereby **ORDERED** that Third-Party Intervenor's Motion to Intervene of Chaucer Corporate Capital No. 2 Ltd., Barbican Corporate Member Limited and MSI Corporate Capital Limited (ECF No. 6) is hereby **DENIED** as moot.

**WILLIAM S. STICKMAN IV**
**U.S. DISTRICT JUDGE**